UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL DRIVER, | ) | |
| TERRY CLAYTON, | ) | |
| MICHAEL BOYD, | ) | |
| NICHOLAS SWORDS, and, | ) | |
| ROY SHOFNER, | ) | |
| individually and as representatives | ) | CAUSE NO. 1:14-cv-2076 RLY-MJD |
| of a class of all similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE MARION COUNTY SHERIFF, and, | ) | |
| THE CONSOLIDATED CITY OF | ) | |
| INDIANAPOLIS AND MARION COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION

This action is a classic case warranting class certification. There are thousands of class members, each of whom has suffered the same legal wrong, yet each of whom's damage claim, consisting of compensation for extra hours or days in jail, is relatively small, and would be infeasible to pursue on an individual basis. Thus, a class action is not only desirable, but necessary to permit these individuals to vindicate their legal rights.

Plaintiffs meet the requirements for class certification, and this Court should enter an order certifying a class of all individuals who, from December 19, 2012 to the present, were held in confinement by the Marion County Sheriff after legal authority for those detentions ceased, due to the Sheriff's practices of: operating under a standard of seventy-two (72) hours to release prisoners who are ordered released; not accepting cash or surety bonds but instead outsourcing

the payment and processing of these bonds to the Marion County Clerk; employing a computer system inadequate for the purposes intended with respect to the timely release of prisoners; re-arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated or dismissed, and for whom the Sheriff no longer has any legal right to detain; and, keeping imprisoned inmates who the courts have released to Community Corrections for electronic monitoring. All of these practices and procedures are unreasonable and result in substantial and unreasonable delays in the release of class members.

### Overview of Rule 23 Requirements

To obtain class certification, plaintiffs must satisfy the requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy of representation — and one of the three subsections of Rule 23(b). See *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca—Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Richardson v. Monroe County Sheriff,* 2008 U.S. Dist. LEXIS 59014 (S.D. Ind. Aug. 4, 2008). For a money damages class certified under Rule 23(b)(3), the provision under which plaintiffs seek certification, the above four prerequisites must be met, and, in addition, a court must find that common questions of fact or law predominate individual questions, and that a collective action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). *Harper,* 581 F.3d at 513.

Satisfaction of Rule 23 requirements categorically entitles plaintiffs to pursue their claims as a class action. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins*., 559 U.S. 393, 398-99 (2009). Failing to meet these requirements precludes certification. *Id*.

A district court should conduct a "rigorous analysis" to determine whether class certification is warranted and may consider the merits of the claims in doing so. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541, 2551 (2011) (citation omitted); *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). However, "[i]n conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. Healthsys.*, 669 F.3d 802, 811 (7th Cir. 2012).

Plaintiffs' burden of proving disputed Rule 23 requirements is the preponderance of the evidence standard. *Messner*, 669 F.3d at 811. District courts have broad discretion in determining whether this burden has been met. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

**Overview of Relevant Facts**

Plaintiffs' class certification evidence demonstrates that the Marion County Sheriff follows certain policies and practices which result in unusually long and unreasonable periods of detentions for persons whom the Sheriff no longer has legal authority to detain. While processing inmates out of jail normally takes 15 minutes to two hours in most Indiana counties (Ex. A, Thompson Aff. ¶ 13; Ex. B, Frierson Aff. ¶ 9), in Marion County such processing can commonly last over several days for persons who have paid bond; been ordered released on their own recognizance, been found not guilty of criminal charges or have had their charges vacated or dismissed; completed their criminal sentences; or been ordered released to Community Corrections for electronic monitoring. See Exhibits A-L, P - Affidavits of Thompson, Frierson, Driver, Boyd, Swords, Shofner, Ruemmele, Kissee, Law, Clayton and Class Member

3

submissions.[1]

Historically, the Marion County Sheriff processed inmates out of jail in a 2-4 hour time period (Ex. A, Thompson Aff. ¶ 5), a bit longer than other Indiana counties but still arguably within reason. However, starting with the administration of Frank Anderson (2003-2011), the Sheriff changed several practices, including outsourcing bond processing to the Marion County Clerk, which greatly increased inmate release times. Ex. A, Thompson Aff. ¶ ¶ 6-9; Ex. B, Frierson Aff. ¶ 6. The 2-4 hour release time period before the bond outsourcing became 4-12 hours after. Ex. B, Frierson Aff. ¶ 6. Moreover, in response to several inadvertent inmate releases, the Sheriff adopted a practice of deliberate delay in processing inmates for release, choosing to err on the side of overdetention rather than timely release. As attested to by former Marion County Superior Court Judge William Young:

> [T]hese delays were, in part, caused by a concern by the Sheriff to avoid inappropriate early releases. In fact I understood that employees who allowed early releases were disciplined which could include being fired. On the other hand, I understood there was no disciplinary action taken when an inmate was overdetained. This resulted in a "culture" within the Sheriff's Department of accepting delayed releases. This "culture" in the Sheriff's Department which was started during Frank Anderson's tenure and continued into Sheriff Layton's tenure.

Ex. C, Young Aff. ¶ 7.

When the inadvertent inmate releases became an issue, standard release times grew considerably longer, from 24 to 72 hours. Ex. C, Young Aff. ¶ 6, 7. Following the Sheriff's installation of a new computer system in 2014, overdetentions of 2-3 days were common. Ex. A, Thompson Aff. ¶ 10; Ex. B, Frierson Aff. ¶ 5.

---

[1] "Class Member submissions" are a collection of affidavits and information sheets from 57 putative class members.

4

When class members, their families, and lawyers contacted the jail to complain, Sheriff employees commonly (and wrongly) told by them the Sheriff has 72 hours to release inmates from jail. Ex. P, Clayton Aff. ¶ 14; Ex. D, Driver Aff. ¶ 16, Ex. G, Shofner Aff. ¶ 18; Ex. F, Swords Aff. ¶ 15; Ex. A, Thompson Aff. ¶ 14; Ex. B, Frierson Aff. ¶ 10.

Each class representative has suffered constitutionally excessive detentions directly attributable to the Sheriff's specific unreasonable policies and practices of:

1. Following a 72 hour release procedure after legal authority to detain an inmate has ceased. Plaintiffs' Third Amended Complaint, ¶ ¶ 86-87 [Dkt. 38]; Ex. P, Clayton Aff. ¶ 14; Ex. D, Driver Aff. ¶ 16; Ex. G, Shofner Aff. ¶ 18; Ex. F, Swords Aff. ¶ 15; Ex. A, Thompson Aff. ¶ 14; Ex. B, Frierson Aff. ¶ 10. All class members share this common question as was experienced by each of the class representatives. Plaintiffs' Third Amended Complaint [Dkt. 38].

2. Reincarcerating individuals whom judges have ordered released on their own recognizance. Class representative Michael Driver was ordered released by the judge in his case, and yet, pursuant to the Sheriff's standard practice, he was handcuffed, chained, and returned to the jail's general population for over two days prior to being released. Plaintiffs' Third Amended Complaint, ¶ ¶ 15-31 [Dkt. 38]; Ex. D, Driver Aff. ¶ 13.

3. Not releasing inmates who have been found not guilty, but rearresting and imprisoning those individuals. Class representative Terry Clayton, after being acquitted following a jury trial, was, pursuant to the Sheriff's standard practice, handcuffed, chained, returned to the Marion County Jail, and reincarcerated for another two days before being released. Plaintiffs' Third Amended Complaint, ¶ ¶ 31-38 [Dkt. 38]; Ex. P, Clayton Aff. ¶12. This

despite the fact that he had no outstanding warrants or holds on him, and he had been in the jail on pretrial detention status for over six months prior to his jury trial, more than sufficient time for the Sheriff to determine whether it had any authority to hold him following the criminal court's judgment of not guilty of the criminal charges authorizing his pretrial detention. Ex. P, Clayton Aff. ¶ 7-13; Ex. H, Ruemmele Aff. ¶ ¶ 9-17.

4.  Not releasing inmates at the conclusion of their sentences, but rather keeping them in jail past their scheduled release time while the Sheriff then begins "processing" them out of the Marion County correctional system, is unreasonable and results in substantial delays in the release of these individuals. This subclass is represented by class representative Michael Boyd. Plaintiffs' Third Amended Complaint, ¶ ¶ 40-53 [Dkt. 38]; Ex. E, Boyd Aff. ¶ 13. Mr. Boyd was held two days past the date of the completion of his sentence. Ex. E, Boyd Aff. ¶ ¶ 14-20.

5.  Not releasing inmates upon payment of their bonds, but rather keeping them in jail while they then "process" them out of the Marion County correctional system within 72 hours is unreasonable and results in substantial delays in the release of these individuals. This subclass is represented by class representative Nicholas Swords. Plaintiffs' Third Amended Complaint, ¶ ¶ 54-70 [Dkt. 38]; Ex. F, Swords Aff. ¶ ¶ 9-15. Mr. Swords was kept three days after his bond had been paid. Ex. F, Swords Aff. ¶ 21.

6.  Not releasing inmates who are to begin home monitoring by Community Corrections upon completion of their jail sentences, but rather keeping them in jail until the Sheriff is ready to transport a group of such inmates to Community Corrections or Community Corrections is "ready" to process them as a group, is unreasonable and results in

substantial delays in the release of these individuals. This subclass is represented by class representative Roy Shofner. Plaintiffs' Third Amended Complaint, ¶ ¶ 71-84 [Dkt. 38]; Ex. G, Shofner Aff. ¶ ¶ 14-19. Mr. Shofner was held five days past his release date. Ex. G, Shofner Aff. ¶ 14.

7. Employing a computer system unable to adequately and accurately process prisoners out of the Marion County correctional system on a timely basis. Plaintiffs' Third Amended Complaint, ¶ ¶ 87-91 [Dkt. 38]. Ex. M, "Marion County sheriff sued for illegal detentions," The Indiana Lawyer, Dec. 22, 2014, (http://www.theindianalawyer.com/article/print?articleId=35966) (last accessed 8/20/15) ("In a statement, the Sheriff's Office said since the department began its largest-ever information technology changes in June [2014], it 'has grappled with early releases and over detentions ... The transition has not gone as well as expected.'"). All class members share this common question.

8. Following a custom and culture of keeping individuals imprisoned past their release dates and times in order to minimize the risk of erroneously releasing inmates. Ex. C, William Young Aff. ¶ 7.

The Marion County Sheriff recognizes that a problem exists, and admits that it is subjecting inmates to "over detentions." Ex. M, *surpa*. The Sheriff's statement to The Indiana Lawyer related above further states that it needs the help of its stakeholders to make "certain constitutional rights are protected." *Id*. It is believed that the Sheriff is referring to it's co-defendant Consolidated City of Indianapolis and Marion County.

Prior to the 2014 fall election, Sheriff Layton and his jail commander met with a group of bail bond writers concerned about the overdetention issue. Sheriff Layton acknowledged to this group that a problem existed, and promised to work on it, but since that time the overdetention problems have continued. Ex. A, Thompson Aff. ¶ 11; Ex. B, Frierson Aff. 8. In discovery responses, the Sheriff has recognized that "inmates should not be incarcerated longer than is reasonable" Ex. N, (Marion County Sheriff's Second Supplemental Answer to Interrogatory No.4), as an explanation of its statement about protecting constitutional rights, referencing its Indiana Lawyer statement above.

Marion County criminal court judges have also recognized the Sheriff's procedures as the source of delayed inmate releases and have complained to the Sheriff about it, but to no avail. See Ex. R, Sheriff's Prod. Resp. MCSO-E4519 (Marion Superior Judge Becky Pierson-Tracy, 6/17/14) ("Your response seems unresponsive to my issue: defendants not getting released from MCJ once ordered to be released. We have families calling and telling us defs are still in jail when they were ordered released days ago."); Ex. R, MCSO-E4092 (Public Defender Ann Sutton to Sheriff's Officer Megan Shipley, 6/20/14) ("[inmate] was ordered released yesterday 6/19 by Court 25. He is still in custody. The person at jail records just told me that he is in the 'release process' but she had no estimate of when he would be released. She says that they are 1-2 days behind on releases (!!!!!) so they'll get to him when they can.").

As Marion County Superior Court Master Commissioner Shannon Logsdon advised court technology officer Amitav Thamba:

> This is an ONGOING pattern and has been happening on a continuous basis for months. I provided Judge Certo with names/dates previously, but I can provide more information if necessary. My concerns are three-fold: (1) that people

8

are having to stay in jail longer than they should; (2) that the extra time is a violation of their Constitutional Rights and they could sue the County – costing taxpayers a lot of money; (3) this effects the overcrowding issue and early/pre-emptive releases because jail space is being taken up by those that shouldn't even be there anymore (not for mere hours, but of an average of 3 extra days on the cases that have been brought to my attention).

Ex. R, MCSO-E6086-6087. See also Ex. O, "Delayed releases continuing problem at Marion County Jail," The Indiana Lawyer, Aug. 15, 2014, ("Two Marion Superior criminal court judges said Friday they continue to be frustrated by delayed releases of arrestees detained after orders have been signed for their release.").

(http://www.theindianalawyer.com/delayed-releases-continuing-problem-at-marion-county-jail/P ARAMS/article/34923) (last accessed 8/20/15).

Attorneys for inmates have also recognized this as a problem and have complained about it. See Ex. R, Sheriff's Discovery Response MCSO-E892, (PD Paralegal for Court G-07; inquiry as to why 3 defendants who were OR'd are still in custody) ("like most of the courts, we've been having issues with people getting released from the jail in a timely manner."); Ex. H, Ruemmele Aff. ¶ 5-7; Ex. Q, "Public defender blasts Marion County Jail" The IndyChannel.com, Dec. 12, 2014 ("A Marion County public defender questioned why the jail kept her client two days after he was supposed to be released")

(http://www.theindychannel.com/news/local-news/public-defender-blasts-marion-county-jail)

(last accessed 8/20/15); Ex. I, Nedeff Aff. ¶ ¶ 5-15 (client kept 1.5 days after order for release despite two telephone calls to inmate records).

The problem is widespread and affects numerous individuals. Ex. R, Sheriff's Discovery Response MCSO-E6086-87 (Logsdon email); Ex. O, "Delayed releases continuing problem at

Marion County Jail," The Indiana Lawyer," Aug. 15, 2014.

(http://www.theindianalawyer.com/delayed-releases-continuing-problem-at-marion-county-jail/P ARAMS/article/34923) (last accessed 8/20/15) ("[Marion Superior Court Judge] Stoner said bailiffs in his court have told him 'it happens so often they feel like the only way they can deal with it is doing it by paper,' either faxing or delivering release orders [to the jail]." ).

The Sheriff's adherence to these policies and procedures of: enacting a 72 hour release procedure; re-arresting and imprisoning individuals released on their own recognizance or found not guilty; refusing to accept the payment of bonds and instead outsourcing their collection and processing; employing and operating a computer system in a manner which delays prisoner releases; keeping prisoners in jail past their release dates until the Sheriff is ready to transport a group of inmates or Community Corrections is ready to process them; and, ignoring court orders for release and deliberately delaying the inmates release for up to 72 hours, are common to the class and result in unreasonable periods of detention.

These common policies and practices of the Sheriff have caused the individual plaintiffs and the class of similarly situated individuals they represent to suffer damages in the form of prolonged and unreasonable detentions, physical discomfort, loss of liberty, lost opportunities, and emotional distress.

### Overview of Relevant Seventh Circuit Precedent

The appropriateness of class certification of plaintiffs' claims have been the subject of several Seventh Circuit cases, which are controlling.

The Seventh Circuit has vacated class certifications in two cases on the issue of the length of time jail officials confine people after lawful authority for those confinements ceased to exist. The Court's reasoning in these cases has been that while over-detentions can be unconstitutional if unreasonable, many factors contribute to the cause of over-detentions, and that if these factors are individual issues rather than common class issues, then individual consideration of those particular facts is required rather than class treatment.

The two most relevant cases are *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010) and *Harper v. Cook County*, 581 F.3d 511 (7th Cir. 2009).

### *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010).

In *Portis*, the Seventh Circuit reversed a district court's decision to certify a Rule 23(b)(3) class in a case challenging the Chicago Police Department's allegedly unconstitutional detention of individuals arrested for non-jailable offenses. The plaintiffs argued that taking more than two hours to process and release those individuals made their detentions unreasonable in violation of the Fourth Amendment. 613 F.3d at 703.

The Seventh Circuit determined that the district court erred in prescribing a two-hour limit to this process, and that plaintiffs would need to show "that any particular detention was excessive." 613 F.3d at 705. The Court held: "What is reasonable, or not, is how much time passes between arrest and release, in relation to the reasons for detention; the time for each step along the way is not subject to an independent limit. None of the class members was held more than 24 hours in total, and none of the representative plaintiffs was held more than 16 1/4 hours. The median time between the CB ["Central Booking"] number and release was 3.75 hours[.]"

*Portis*, 613 F.3d at 705. (citing *United States v. Childs,* 277 F.3d 947 (7th Cir. 2002) (en banc)).

The Court in *Portis* reasoned that "What remains true, as [*County of Riverside v.*] *McLaughlin* [500 U.S. 44 (1991] observed and *Chortek* [*v. Milwaukee*, 356 F.3d 740] reiterated, is that detention less than 48 hours may be unreasonably long. Needless delay, or delay for delay's sake--or, worse, delay deliberately created so that the process becomes the punishment--violates the fourth amendment. *McLaughlin*, 500 U.S. at 56, 59. Indeed, we suggested in *Gramenos* [*v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986)] and *Chortek* that detentions as brief as four hours could be excessive and must be justified. But the plaintiff bears the burdens of proof and persuasion on the contention that any particular detention was excessive, and the court must examine not only the length of a given detention but also the reasons why release was deferred." *Portis*, 613 F.3d at 705.

### *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009)

In *Harper,* the Seventh Circuit also reversed a district court's certification of a class of pretrial detainees because it reasoned that the constitutionality of the detentions at issue depended upon whether the length of the delay before the detainee's release was reasonable in any given case. This determination was made by considering "how long each detainee was held after bond was posted and what justifications there might be for the delay on that particular day or for that particular detainee." 581 F.3d at 515. In making that determination, a court would need to examine both the length of a given detention and the reasons why the release was deferred. 581 F.3d at 515. The Seventh Circuit noted that many individual factors can influence the reasonableness of a delay, such as "how long each detainee was held after bond was posted['']" "what justifications there might be for the delay on that particular day['']" "the time of day,"

"whether the jail was processing an unusually large number of detainees at that time," "whether other events occurring at the jail legitimately slowed processing times," and, "whether the detainee's lack of cooperation delayed processing[.]" *Harper*, 581 F.3d at 515. The Court also relied upon its decision in *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988) in which it held that the facts presented in each case determines what is a reasonable time for detaining a prisoner after grounds for detention have ceased to exist. Thus, the Harper Court determined that "Liability, to say nothing of damages, would need to be determined on an individual basis. Thus, common issues do not predominate over individual issues, making this case inappropriate for class disposition. Fed. R. Civ. P. 23(b)(3)." *Harper*, 581 F.3d at 515.

### Common Detention Procedures Can Be Challenged on a Class Basis

The results in *Portis* and *Harper* hold that class-wide treatment of simple "over-detention" cases is inappropriate. If the results in those cases were all that matter, plaintiffs would not have brought this case as a class action. But, as is common in the law, most rules have exceptions, and the relevant exception in this case is that a class of detainees can collectively challenge as unreasonable common detention *procedures* or *processes* that result in excessive detentions.

In *Harper,* the Seventh Circuit left the door open for a plaintiff in an appropriate "overdetention-plus" case to obtain class certification if the plaintiff challenged a specific detention procedure that was common to the class and which resulted in overdetention: "*Failing to take issue with any particular intake procedure,* Harper is left with a claim that the Sheriff is unconstitutionally holding detainees after bond has been posted." *Harper*, 581 F.3d at 514-515

13

(emphasis supplied).

Similarly, in *Portis*, the Court noted that class-wide treatment of common unreasonable detention procedures is appropriate: "The Supreme Court suggested in *McLaughlin* that class treatment might be appropriate if the class sought to establish that a jurisdiction had adopted a policy of deliberate delay. 500 U.S. at 59. That sort of policy could be ended by an injunction. We do not foreclose the possibility of such class-wide relief here, but the record so far does not establish deliberate delay." *Portis*, 613 F.3d at 705-706.

Indeed, the Supreme Court in *McLaughlin* specifically *approved* a class-based challenge to a county's practice of combining probable cause hearings with arraignments, a procedure which the class argued resulted in unreasonable delays in releasing persons arrested without a warrant. The Court recognized that this procedure could result in delays greater than 48 hours, a time period which the Court held presumptively unreasonable, and one which could be challenged on a class-wide basis:

> The record indicates, however, that the County's current policy and practice do not comport fully with the principles we have outlined. The County's current policy is to offer combined proceedings within two days, exclusive of Saturdays, Sundays, or holidays. As a result, persons arrested on Thursdays may have to wait until the following Monday before they receive a probable cause determination. The delay is even longer if there is an intervening holiday. Thus, the County's regular practice exceeds the 48-hour period we deem constitutionally  permissible, *meaning that the County is not immune from systemic challenges, such as this class action.*

*McLaughlin*, 500 U.S. at 58-59 (emphasis supplied).

The Seventh Circuit's decisions in *Harper* and *Portis* should be read as consistent with *McLaughlin*, and as not precluding class-based challenges to administrative policies and practices which result in systemic unreasonable delays.

14

The release delays in this case have extended many days and much longer than the 48 hours the McLaughlin Court held presumptively unconstitutional for probable cause hearings for those arrested without a warrant, even though the administrative burdens associated with release once legal authority for detention ceases to exist, as at issue here, are considerably less than in *McLaughlin*. In setting 48 hours as presumptively unconstitutional for a post-arrest judicial determination of probable cause, the Supreme Court took into consideration that "where, as in Riverside County, the probable cause determination is combined with arraignment, there will be delays caused by paperwork and logistical problems. Records will have to be reviewed, charging documents drafted, appearance of counsel arranged, and appropriate bail determined" (500 U.S. at 55), in addition "completing the administrative steps incident to arrest and arranging for a magistrate" takes even more time. 500 U.S. at 58. In the present case, all of these steps have been completed, and a court order has been entered which ends the legal authority of the Sheriff to continue the person's detention. While a short period of time is reasonable to allow the Sheriff to check its records to determine if it is releasing the right person and to return the person's property, these administrative steps pale in comparison to the administrative burdens which led the McLaughlin Court to shift the burden to 48 hours post-arrest. "In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as

soon as is reasonably feasible, but in no event later than 48 hours after arrest." *McLaughlin*, 500

U.S. at 57.

This Court need not decide now which Marion County practices create unreasonable and

excessive detentions, or engage in burden-shifting after a set number of hours have passed since

the inmate's legal detention ended. What is important at this stage of the proceedings is to

recognize that in an appropriate case such as this one, a class of individuals for whom the sheriff

no longer has any legal authority to detain, may challenge administrative practices which result in

excessive post-order detentions. *McLaughlin* makes that crystal-clear.


### The *Otero* Case Illustrates the Appropriateness of Class Certification

The appropriateness of class certification in this case is illustrated by a recent Northern

District of Illinois case in which Judge St. Eve granted class certification to a class of jail inmates

claiming unreasonable detentions based upon the procedure utilized by the Cook County Sheriff

of grouping acquitted inmates with other inmates and returning them to and processing them into

the jail before discharge. *Otero v. Dart*, 306 F.R.D. 197, 204 (N.D. Ill. 2014) (No.

1:12-cv-03148, Doc. No. 92) (Order Granting Class Certification) (09/02/14). The court found

this a common procedure which the class could challenge (and which results, according to the

plaintiff) in overdetentions. The court had previously denied class certification when the class

directly challenged only the length of time class members were held after acquittals. *Otero*, Doc.

No. 52 (12/20/2013). In its subsequent order, the Court distinguished *Portis* and *Harper* and

determined that the new class focus on the procedure was a permissible class-based issue. The

Court ruled:

While Plaintiff's amended proposed class is largely the same as his initial proposed class, he has changed the focus of his claim. In his renewed motion for class certification, Plaintiff presents the following common questions of fact and law that he asserts apply to the unlawful detention claims of both Plaintiff and the proposed class:

1.  Whether Defendant lacked policies and procedures that acknowledge a male inmate's right to freedom that he acquires by virtue of an acquittal or other favorable disposition of the charges brought against him;

2.  Whether Defendant maintains a policy or practice of detaining male citizens who were found not guilty or otherwise received a judicial determination requiring their release by seizing and handcuffing them, detaining and transporting them in the same holding cells as the other regular inmates, processing them back into the general prison population and continuing to hold them until running a check for outstanding warrants; and

3.  Whether such policies or practices (or lack thereof) are unconstitutional.

(Mot. at 7-8.) Based on these questions, Plaintiff's claim challenges Defendant's alleged restriction of acquitted detainees' right to freedom by treating them in the same manner as regular inmates returning to their cells in the general population of the Cook County Jail. Rather than focus on the length of time of Plaintiff's post-acquittal detention, he now focuses on Defendant's practice of grouping acquitted detainees together with regular inmates, and transporting them to their cells in the jail's general population.

*Otero v. Dart*, 306 F.R.D. at 204 (Order Granting Class Certification).

The Cook County Sheriff sought an immediate Rule 23 (f) appeal in the *Otero* case, which the Seventh Circuit denied without opinion. No. 14-8024 (Oct. 10, 2014). While the Seventh Circuit's decision has no precedential value, the *Otero* decision, which granted class certification in light of *Portis* and *Harper*, supports class certification in this case.

*Otero* deals with the single issue of returning acquitted inmates post-trial to jail and reincarcerating them prior to processing them out of jail. That was the issue which Judge St. Eve

determined predominated and was appropriate for class treatment. The same issue is present in this case, as it is the exact situation suffered by class representative Terry Clayton, who, after being acquitted following a jury trial, was handcuffed, chained, returned to the Marion County Jail, and reincarcerated for another two days before being released. Plaintiffs' Third Amended Complaint, ¶ ¶ 32-39; Ex. P, Clayton Aff. ¶12. This procedure occurred despite the fact that he had no outstanding warrants or holds on him, and he had been in the jail on pretrial detention status for over six months prior to his jury trial, more than sufficient time for the Sheriff to determine whether it had any authority to hold him following the criminal court's judgment of not guilty of the criminal charges authorizing his pretrial detention. Ex. P, Clayton Aff. ¶ 7-13; Ex. H, Ruemmele Aff. ¶ 9-17.

Just as in *Otero*, class certification is appropriate in this case to determine this common question on behalf of the subclass of individuals represented by Mr. Clayton, as well as the other subclasses similarly suffering excessive detentions due to the Sheriff's unconstitutional policies and practices as set forth above.

### The Policy behind Rule 23 Would be Advanced by Certification in this Case

The Seventh Circuit has stated that the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Mace v. VanRu Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997).  The Supreme Court has recognized that "the aggregation of individual claims in the context of a class-wide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government.  Were it not economically feasible to obtain relief within

the traditional framework of a multiplicity of small individual suits for damages, the aggrieved

persons may be without an effective redress unless they may employ the class-action device."

*Deposit Guarantee National Bank v. Roper,* 445 U.S. 326, 339 (1980). Similarly, the Indiana

Court of Appeals has recognized:

> The class action is particularly appropriate where those who have allegedly been
> injured 'are in a poor position to seek legal redress, either because they do not
> know enough or because such redress is disproportionately expensive. . . . Its
> "historic mission" has been to [take] care of the smaller guy.' . . . 'The usefulness
> of the representative action as a device for the aggregation of small claims is
> "persuasive of the necessity of a liberal constitution of … Rule 23."

*Boehne v. Camelot Village Apartments,* 154 Ind. App. 21, 34, 288 N.E.2d 771, 778 (1972)

(citations omitted).

Indeed, it is precisely this type of claim for which the class action mechanism was

designed. *Hughes v. Kore of Ind. Enter.,* 731 F.3d 672, 677 (7th Cir. 2013) ("But we don't think

smallness should be a bar. This is obvious when what is small is not the aggregate but the

individual claim; indeed that's the type of case in which class action treatment is most needful.").

**This Case Meets the Four Requirements of F.R.C.P. 23 (a)**

The four requirements for class certification under F.R.C.P. 23 (a) are met in this case.

**1.     The Class is so Numerous that Joinder of all Members Would be
        Impracticable**

While precise numbers are still to be determined, it is clear that the class consists of many

thousands of individuals. As reported by the Sheriff, "[i]n 2012, 49,903 arrestees were received

in the Arrestee Processing Center. Of those, 20,657 were released, and 29,246 inmates were sent

to the Marion County Jail. The average length of stay in the Marion County Jail in 2012 was 123.18 hours." Marion County Sheriff Office, 2012 Progress Report, p. 17 (available at: http://www.indy.gov/eGov/County/MCSD/Documents/2012%20Progress%20Report-sm.pdf (last accessed 10/13/15). The Sheriff's counsel in this case has indicated that numerosity will not be contested.

Because numerosity is uncontested, and because plaintiffs at this stage are not required to specify the exact number of persons in the class, the Court should find that plaintiffs have satisfied the numerosity requirement. See *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).

The numerosity prerequisite is not simply a test of numbers; rather, the real inquiry is whether joinder would be impractical. F.R.C.P. 23 (A)(1); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (numerosity analysis does not rest on magic number but permissive joinder is usually deemed impracticable where class members number 40 or more). That inquiry requires the court to consider judicial economy and the ability of the class members to institute individual suits.

In order to satisfy the numerosity requirement of Rule 23, plaintiffs are not required to specify the identities nor exact number of persons included in the proposed class, *Marcial,* 880 F.2d at 957; *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978), *cert. denied*, 441 U.S. 905 (1979).  Rather, a plaintiff must supply facts or demonstrate circumstances leading to a reasonable estimate that the number of class members is large enough to make joinder impracticable. *Jones v. Blinziner*, 536 F. Supp. 1181, 1189 (N.D. Ind. 1982) (*quoting* 3B Moore's Federal Practice paragraph 23.05(3) (2d ed. 1978)).

A court must "rely on simple common sense when determining whether a class size meets the numerosity requirement." *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 134-135 (N.D. Ind. 2013) (citing *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010) and *Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 294 (N.D. Ill. 2008)).

Here, the proposed class is so numerous that joinder is impracticable, if not impossible. Plaintiffs have submitted sufficient evidence demonstrating that the proposed class in this case consists of many thousands of individuals. This figure is based on contemporaneously submitted affidavits of five class representatives and 59 putative class members, the affidavits of several bail bondsman and attorneys, a former judge, and the Sheriff's own public statements and documents recognizing its overdetention problem. It is obvious that the proposed class far exceeds the 40 class member rule of thumb customarily applied in Rule 23(a)(1) determinations. *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 612 (N.D.Ill. 2009). There is no doubt that this class is so numerous that joinder of individual plaintiffs would be impracticable.

### 2.    The Class Shares Common Questions of Law and Fact

Subsection (a) (2) of Rule 23 requires that there be questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) The class in this case shares factual circumstances and legal questions in common.

The "commonality requirement has been characterized as a 'low hurdle' easily surmountable.'" *Wesley v. General Motors Acceptance Corp.*, No. 91 C 3368, 1992 W.L. 57948, at 3 (N.D. Ill. Mar. 20, 1992). Factual variation in the details of individual claims do not defeat a

finding of commonality. *Rosario*, 963 F.2d *Id.* at 1017 (citations omitted); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981). In deciding commonality, courts give Rule 23(a)(2) a "highly permissive reading." *Markham v. White*, 171 F.R.D. 217, 222 (N.D.Ill. 1997).

Individual class members' claims are common if a defendant engages in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Here the entire class shares the common factual and legal questions regarding the Sheriff's 72 hour hold practice, the employment of an inadequate computer system, and the custom of holding prisoners past their release dates. Additionally, each subclass shares the common questions presented by their particular circumstances and the Sheriff's common practices of not accepting cash or surety bonds but instead outsourcing the payment and processing of these bonds to the Marion County Clerk; re-arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated or dismissed; and, continuing to imprison inmates whom the courts have released to Community Corrections for electronic monitoring.

These common facts and legal claim satisfy the commonality requirement of subsection (a) (2) of Rule 23.

### 3.   The Plaintiffs' Claims Are Typical of the Claims of the Class, and the Defendants' Defenses Are the Same as They Would Be to the Claims of All Other Class Members

The third requirements under Rule 23(a) is that the plaintiffs must show that "the claims

or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.

Civ. P. 23(a)(3). A claim is typical if it "arises from the same event or practice or course of

conduct that gives rise to the claims of other class members and . . . are based on the same legal

theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Even though some factual

variations may not defeat typicality, the requirement is meant to ensure that the named

representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

The typicality requirement is met when the named representative's claims are essentially

the same as those of the class at large, and arise from the same course of conduct giving rise to

the claims of other class members. *General Telephone v. Falcon,* 457 U.S. 147 (1982); *De La*

*Fuentes v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1985). As long as the nature of the

class representative's claim is similar to those asserted on behalf of the class, it does not matter

that the specific facts bringing the various class members into contact with the defendant differ

somewhat. *Long v. Thornton Twp. High School Dist.,* 205, 82 F.R.D. 186, 190 (N.D. Ill. 1979).

The question of typicality is related closely to commonality. *Rosario*, 963 F.2d at 1018. "A

plaintiff's claim is typical if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members and his or her claims are based on the same legal

theory." *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 597 (7th Cir.1993)

(quoting *De La Fuente,* 713 F.2d at 232). "The typicality requirement may be satisfied even if

there are factual distinctions between the claims of the named plaintiffs and those of other class

members. Thus, similarity of legal theory may control even in the face of differences of fact." *Id*.

"[I]t is well settled that the presence of some factual variations among class members'

experiences will not defeat class certification." *Tylka v. Gerber Products Co.*, 178 F.R.D. 493, 497 (N.D. Ill. 1998).

With respect to the proposed Class and subclasses, each of the four subclass representatives were injured by the Sheriff's practices identified above, and each has the same legal claims to assert against the defendants. Similarly, it is assumed the defendants have the same defenses against the individual class representatives as they would against all class members.

Accordingly, the claims of the class representatives are typical of the proposed Class, and typicality is established pursuant to Rule 23 (a) (3).

### 4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a) finally requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members. *Retired Chicago Police Ass'n.,* 7 F.3d at 598. Class representatives must not present claims which are antagonistic or which conflict with the claims of the class. *Rosario*, 963 F.2d at 1018. Also, counsel for the named plaintiffs must be experienced and qualified and generally be able to conduct the litigation. See *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981). Because of the difficulty of proving negative facts, these factors are usually presumed in the absence of contrary evidence. *See Newberg on Class Actions,* § 7.24 (3rd ed. 1992) (collecting cases).

The claims of Plaintiffs Michael Driver, Terry Clayton, Michael Boyd, Nicholas Swords, and Roy Shofner do not conflict with nor are they antagonistic to the claims of the class; rather, they present the very same claims as asserted on behalf of the class. Additionally, these class representatives are sufficiently interested in the case, as demonstrated by their efforts in seeking experienced counsel and filing litigation. Plaintiffs' counsel team has been assembled to provide quality representation to the class: Attorney Richard Waples, the former legal director of the American Civil Liberties Union of Indiana, concentrates his practice in Section 1983 litigation, and has thirty years of experience in representing prisoners in individual and class action cases. Attorney John P. Young has been in practice for more than twenty seven years focusing exclusively in litigation. Attorney Matt Boldt has personal experience in the Marion County judicial system, having served as a bailiff there, and has experience in electronic discovery. Plaintiffs believe the competency, experience, reputation, and qualifications of class counsel to conduct litigation of this sort are known by the Court.

Plaintiffs meet the adequacy of representation requirement of subsection Rule 23 (a) (4).


**This Case Meets the Requirements of Subdivision b (3)**

Federal Rule 23(b)(3) allows for certification if the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (alterations in original) (citing Wright &

Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). The "guiding principle" of the superiority requirement is the preservation of the economies of time, effort, and expense and the promotion of uniformity among persons similarly situated, balanced against the procedural fairness and desirable results. *Cox v. Sherman Capital*, LLC, 295 F.R.D. 207, 214 (S.D. Ind. 2013) (quoting *Avila v. Van Ru Credit Corp*., No. 94 C 3234, 1995 U.S. Dist. LEXIS 461, 1995 WL 41425 at *6 (N.D. Ill. Jan. 31, 1995)). See also *Garcia v. United States*, 2015 U.S. Claims LEXIS 399 (Fed. Cl. Apr. 9, 2015) (same) (quoting FRCP 23, Advisory Committee Notes (1966)).

As U. S. District Court Judge Barker explained:

Common questions predominate when they "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." Wright & Miller, Federal Practice & Procedure: Civil " 1788. *See Amchem*, 521 U.S. at 515-616, 117 S. Ct. at 2246.   As we noted in *Hubler Chevrolet*, the predominance requirement is satisfied when there is an "essential factual link between all class members." 193 F.R.D. at 580. The Supreme Court has cautioned us to weigh the predominance and superiority issues against individual class member's interest in going it alone. *Amchem*, 521 U.S. at 616, 117 S. Ct. at 2246."

*Owner-Operator Independent Driver's Assoc., v. Mayflower Trucking, Inc*., 204 F.R.D. 138, 148 (S.D. Ind. 2001) (certifying (b) (2) and (b) (3) class over numerous objections).

Common questions predominate here as all class members share the common factual link that they all were held for excessive periods of time because of the Sheriff's standard policies and practices challenged in this lawsuit; all class members share the common Fourth Amendment and state law claims of negligence and false imprisonment asserted in the Third Amended Complaint, [Dkt. 38] which are capable of collective resolution; and, all class members have significant interests in proceeding together as a class rather than as individuals.

Rule 23 guides courts in making the predominance and superiority determinations by

setting forth the following factors to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)—(D). Here, each of these considerations cut in favor of finding predominance and the superiority of proceeding with this case as a class action.

1.  *Class Members Have no Interest in Individually Controlling Prosecution of this Case*

This class action will proceed only as a class action because the stake any individual class member has in the case is too small to justify separate litigation. Under these circumstances, it is clear that class members have no interests in prosecuting separate claims and that a class is the superior litigation device. *In re Revco Sec. Litig,* 142 F.R.D. 659 (N.D. Ohio 1992) (where class members could not afford separate actions, class actions superior to other methods); *In re Badger Mountain Irrigation Dist. Secc. Litig.*, 143 F.R.D. 693 (W.D. Wash. 1992) (Rule 23(b)(3) class certified as superior to other methods of adjudication where average class member's claim was approximately $15,000 dollars, which was an insufficient investment to justify each individual financing an action against sophisticated defendant); *Scholes v. Moore,* 150 F.R.D. 133 (N.D. Ill. 1993) (Rule 23(b)(3) class action superior where there were hundreds of class members many of which with small claims not justifying individual suits).

As the Supreme Court has recognized, where claims are small, "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 158

(1974) ("Economic reality dictates that petitioner's suit proceed as a class action or not at all."). This factor favors the Court finding that Rule 23 (b) (3) requirements of commonality and superiority are met.

2.      *There is no Other Litigation pending Concerning this Controversy*

There is no other similar litigation pending about which Plaintiffs' counsel is aware. Because there is no such other case, this factor favors the Court finding predominance and superiority. *Fry v. UAL Corp.*, 136 F.R. D. 626, 637 (N.D. Ill. 1991) (in certifying the class, the court specifically noted "it was unaware of any other litigation which has been filed concerning the alleged misrepresentation by UAL."); *Culpepper v. Inland Mortg. Corp.*, 189 F.R.D. 668, 674 n.4 (N.D. Ala. 1999) (court noted "[t]here has been no indication that any other litigation on this issue against this defendant has commenced, although there have been numerous lawsuits challenging the same practice. Consequently, treatment of this action as a class action could determine whether [defendant's] practice is violative of RESPA without subjecting the defendant to duplicative lawsuits.). Accordingly, this factor favors the Court finding Rule 23 (b) (3) requirements of commonality and superiority are met.

3.      *It is Desirable to Concentrate the Litigation of these Claims in this Forum*

Again, because the individual claims of the plaintiff class are too small to make them economically feasible to litigate as separate actions, it is not only desirable but necessary to aggregate the litigation. This is the quintessential class action situation, and thus this factor cuts in favor of finding predominance and superiority. *Gilbert v. First Alert, Inc.*, 904 F.Supp. 714, 719 (N.D. Ill. 1995) ("the claims of individual investors are often too small to merit separate law suits. ... [a] class action is thus a useful device in which to litigate similar claims as well as an

efficient deterrent against corporate wrongdoing.") (quotation omitted); *Fry*, 136 F.R.D. at 637 (class superior where claims involved are "too small to be brought in individual lawsuits."); *Culpepper*, 189 F.R.D. at 674 n.4 ("Class actions have been found to be particularly appropriate where a large number" of class members seek relief "from a course of conduct that violates laws aimed at preventing misconduct ... but where the amount of each borrower's damages may be too small to warrant individual lawsuits."). Accordingly, this factor favors certification of the class.

*4.     There will be no Prohibitive Difficulties in Managing this Class Action*

The management factor also favors certification.   Class actions are by their nature more complicated than individual actions, but this does not make them unmanageable. Mere complexity is, in itself, an insufficient basis for class denial; indeed, complexity is a characteristic often inherent with class actions. 1 *Newberg,* § 4.32. The quantum of managerial difficulty that would require denial of class certification must be extraordinary. "[U]ntil management is recognized as impossible or near impossible, the Court will depend upon the ingenuity and aid of counsel to solve the complex problems" of class action litigation.   *In re Motor Vehicle Pollution Control Devices*, 52 F.R.D. 398, 404 (C.D. Cal. 1971), *aff'd in part, rev'd in part*, 481 F.2d 122 (9th Cir.), *cert. denied*, 414 U.S. 1045 (1973).   Here, with the predominate factual issue of the Sheriff's common practices resulting in overdetentions, prohibitive management difficulties are unlikely to arise.

Where an action originates from common operative facts and class members are potentially limited or incapable of exercising their own rights, common issues predominate and a class action is the superior method of adjudication. *Connerwood,* 683 N.E.2d at1328-29; *See also E. G. Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("common nexus of operative facts" will

establish predominance); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 611-12 (W.D. Pa. 1983) (if liability issue common, then it predominates, and class should be certified under 23 (b) (3)). The purpose of the predominance requirement is simply to determine whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The individual members of this case's putative class have no interest in individually litigating these issues, due to the expense required and limited potential individual recoveries. Plaintiffs' undersigned counsel is aware of no other cases addressing the systemic Marion County issues identified in this case. If there are other cases, it would be desirable to consolidate the class members' claims against the Sheriff and City/County in this single action, as all of the discovery and pretrial proceedings would be the same in all cases and the expense of individual litigation would be avoided. Class treatment is more cost-effective as multiple individual actions would increase expense to both the plaintiffs and the defendants.

In this case, the elements of the Class's constitutional and state law claims are susceptible to resolution of liability on a class wide basis because the plaintiffs have limited this case to specific policies and practices of the defendants which result in unreasonable detentions. These issues include the constitutionality of the Sheriff's practices of: operating under a standard of seventy-two (72) hours to release prisoners who are ordered released; not accepting cash or surety bonds but instead outsourcing the payment and processing of these bonds to the Marion County Clerk; employing a computer system inadequate for the purposes intended with respect to the timely release of prisoners; re-arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated

or dismissed; and, keeping imprisoned prisoners whom the courts have released to Community Corrections for electronic monitoring.

Each of the above issues can be decided on a class-wide basis and will determine the constitutionality of the Sheriff's practices and the reasonableness or unreasonableness of the consequential lengthy detentions experienced by the plaintiff class. These liability issues can be decided on a class-wide basis without the need for individualized proof of any particular inmate. These issues go to the heart of this case and predominate over any individualized issues.

This case presents the same issue that led Judge St. Eve to find the predominance and superiority of class adjudication in *Otero*:

> Plaintiff challenges what he alleges is a policy and practice that applies to all Cook County Jail detainees, who are found not guilty, acquitted, or otherwise have the charges against them dismissed. The predominant issue in this litigation will be the existence and constitutionality of that alleged practice.

*Otero v. Dart*, 306 F.R.D. at 207.

If the class succeeds on its constitutional and state law claims, determinations of damages suffered by members of the proposed class will be necessary. However, the existence of variations of individual damages is not sufficient to defeat certification under Rule 23(b)(3). Class certification can be appropriate, even if there are, like here, individual damages for class members "if there are substantial common issues that outweigh the single variable of damage amounts." *Arreola*, 546 F.3d at 801. See also *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 139 (N.D. Ind. 2013) ("The cost of medical expenses incurred, which would have otherwise been covered, would require a more individualized treatment, but the Court does not believe the issue is great enough to deter certification under Rule 23(b)(3))." Indeed, courts recognize that "[t]he

31

amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) *cert. denied* 429 U.S. 816 (1976). "Generally, the fact that damages are specific to each individual class member is not a basis for denying class certification." *Wall v. Merrill Lynch, Pierce, Fenner & Smith*, 1992 WL 245540, at *3 (N.D. Ill. Sept. 21, 1992) (citing *Harmon v. Lyphomed, Inc.*, 122 F.R.D. 522, 527 (N.D. Ill. 1988)). "If common questions as to liability predominate, then the issue of liability can be determined on a classwide basis and, if necessary, damages can then be determined on an individual basis." *Id.* (citing *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D. Ill. 1989). As the Seventh Circuit has recognized "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Those solutions can include the reinstitution of settlement proceedings after a finding of liability and the appointment of a special master or magistrate to determine individual damages. *Id.*

The Seventh Circuit has stated that potential limited recoveries of individual class members should not bar class certification when a class action would be an effective mechanism for resolving claims that individuals might otherwise not pursue because of the burdens of litigation and the relatively limited potential payoff. *Mace*, 109 F.3d at 344. Indeed, in reversing District Judge Magnus-Stinson's decertification of a class action, the Seventh Circuit recently held that "the smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment and the likelier that the class members will receive some money rather than (without a class action) probably nothing, given the difficulty of interesting a lawyer in handling a [modest individual] suit...." *Hughes v. Kore of Ind. Enter.*, 731 F.3d 672, 675 (7th Cir. 2013).

Indeed, "class actions are particularly appropriate .... where, as here, there is a large number of small or medium-sized claims." *Reed v. Chartwell Fin. Servs*., 2000 U.S. Dist. LEXIS 22566 (N.D. Ill. June 22, 2000) (citing *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977)).

This is a classic case warranting class certification. The common questions of law and fact in this litigation predominate over any questions affecting only individual class members. No other method is available but a class action to collectively and conclusively resolve the substantial questions of the defendants' liability to thousands of individuals. Certainly it makes little sense in terms of judicial or litigant economy to require these individuals to pursue separate litigation on these issues.

Because class members' individual claims are relatively small, compensation for extra hours or days in detention, as opposed to weeks or months, individual class members have little interest in controlling the prosecution of this or any individual cases, and are realistically precluded by the expensive nature of litigation from doing so. Plaintiffs' counsel is unaware of any other litigation that has been initiated by any person on this issue. It is thus desirable to concentrate the claims of putative class members in this forum. Finally, because the predominate facts in this case are likely to be undisputed (*e.g.,* the Sheriff's acknowledgment of its overdetention issue) the liability issues may be resolvable by summary judgment and there should be little difficulty in managing the litigation. Accordingly, a class action is superior to any other method of adjudication, and this Court should certify the class pursuant to Rule 23(b)(3).

**Conclusion**

The proposed class in this case meets the commonality, typicality, numerosity, and adequacy of representation requirements set forth in Rule 23(a).   Common questions of fact and law predominate over individual questions and a class action is superior to any other available method of adjudication.   Accordingly, the Court should certify the case as a class action for money damages pursuant to Rule 23 (a) and (b) (3).


Respectfully submitted,

Dated: October 15, 2015                              */s/ Richard A. Waples*
                                                      Richard A. Waples
                                                      John P. Young
                                                      Matthew Boldt

                                                      Attorneys for Plaintiffs

Richard A. Waples
**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, Indiana 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com

John P. Young
Matthew Boldt
**YOUNG & YOUNG**
128 N. Delaware St. 3rd Floor
Indianapolis, IN 46204
TEL: (317) 639-5161
TOLL FREE 1 (888) 639-5161
Fax (317) 639-4978
EMAIL: john@youngandyoungin.com;
matthew@youngandyoungin.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2015, a copy of this document was filed

electronically. Notice of this filing will be sent to counsel of record by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system:

aoverholt@fbtlaw.com

Amanda.dinges@indy.gov

Daniel.bowman@indy.gov

*/s/ Richard A. Waples*
Richard A. Waples

**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, IN 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com