UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL  DRIVER, | ) | |
| TERRY  CLAYTON, | ) | |
| MICHAEL  BOYD, | ) | |
| NICHOLAS  SWORDS, and | ) | |
| ROY  SHOFNER, individually and as | ) | 1:14-cv-02076-RLY-MJD |
| representatives of a class of all similarly | ) | |
| situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MARION COUNTY SHERIFF, and | ) | |
| CONSOLIDATED CITY OF | ) | |
| INDIANAPOLIS AND MARION | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs, Michael Driver, Terry Clayton, Michael Boyd, Nicholas Swords, and

Roy Shofner, move to certify a class with five subclasses under Federal Rule of Civil

Procedure 23(a) and (b)(3).  For the reasons set forth below, the court **GRANTS in part**

and **DENIES in part** Plaintiffs' motion.

## I.    Background

Plaintiffs bring a claim under 42 U.S.C. § 1983 ("Section 1983"), claiming the

policies and practices of the Marion County Sheriff caused them to be detained in the

Marion County Jail awaiting release for an unreasonably long period of time, in violation

of the Fourth Amendment.  For example, Mr. Driver was arrested on Saturday, December

13, 2014, for operating a motor vehicle while intoxicated, a Class C misdemeanor. (Filing No. 73-4, Affidavit of Michael Driver ("Driver Aff.") ¶ 7). His bond was set at $1,500. (*Id.* ¶ 9). On Monday, December 15, 2014, he appeared before the court for a reduction in bond. (*Id.* ¶ 10). The court granted the motion and he was released on his own recognizance. (*Id.* ¶ 13). Following the hearing, Sheriff's deputies returned him to the Jail for processing, but he was not released until Wednesday, December 17, 2014, at approximately 6:00 p.m. (*Id.* ¶¶ 13-15). According to Mr. Driver, it was "common knowledge among the inmate population . . . that the Sheriff took up to seventy-two (72) hours or even longer to release prisoners." (*Id.* ¶ 16).

Mr. Clayton was a pretrial detainee at the Jail from May 28, 2014 to December 10, 2014. (Filing No. 73-16, Affidavit of Terry Clayton ("Clayton Aff.") ¶ 7). Following a jury trial on Wednesday, December 10, 2014, he was found not guilty around 11:30 p.m. that day. (*Id.* ¶¶ 9-10). The judge entered an order for his immediate release. (*Id.* ¶ 11). Sheriff's deputies returned him to the Jail, and he was not released until Friday, December 12, at approximately 4:00 p.m. (*Id.* ¶ 13). Mr. Clayton complained about the delay, but "was told by correctional officers and a correctional sergeant that the jail had 72 hours to release inmates." (*Id.* ¶ 14).

Mr. Boyd pled guilty to a charge of operating a vehicle while intoxicated on November 20, 2014. (Filing No. 73-5, Affidavit of Michael Boyd ("Boyd Aff.") ¶ 8). He was sentenced to ten days in the Jail, but with good time credit, he would actually serve five days. (*Id.* ¶ 9). His sentence was to begin immediately after the conclusion of the plea hearing and was to end on November 24. (*Id.* ¶ 11). On November 24, he

2

complained that he was not released, but his complaints were ignored.  (*Id.* ¶ 15).  Marion

Superior Court staff intervened, and he was released on November 26.  (*Id.* ¶ 20).

   Mr. Swords was arrested and charged with two misdemeanor charges of operating

a motor vehicle while intoxicated on December 10, 2014.  (Filing No. 73-6, Affidavit of

Nicholas Swords ("Swords Aff.") ¶ 8).  A judge set his bond at $150.  (*Id.* ¶ 9).  His

cousin paid the bond on December 12, and was told not to wait around "because it would

take 'up to 72 hours' for the Sheriff to release [him]."  (*Id.* ¶ 15).  Mr. Swords was not

released until December 15.  (*Id.* ¶ 21).

   Lastly, Mr. Shofner pled guilty to driving while intoxicated and was sentenced to

nine days in the Marion County Jail, beginning on February 4, 2015.  (Filing No. 73-7,

Affidavit of Roy Shofner ("Shofner Aff.") ¶ 8).  At the conclusion of his jail sentence on

February 12, Mr. Shofner was to begin a sentence of electronic monitoring/home

detention by Marion County Community Corrections.  (*Id.* ¶ 9).  He was scheduled to

return to work on Friday, February 13.  (*Id.* ¶ 13).  Instead of being released on February

12, he remained incarcerated until February 17.  (*Id.* ¶ 14).  When he "complained about

[his] over-incarceration to the correctional officers holding [him], [he] was told that the

Sheriff had 72 hours to release inmates."  (*Id.* ¶ 18).

   The Plaintiffs claim their illegal detention is the result of various policies and

practices instituted by the Sheriff, which include: (1) "operating under a standard of

seventy-two hours to release prisoners who are ordered released" (Filing No. 38, Third

Amended Complaint ¶ 87); (2) the "employment of a computer system inadequate for the

purposes intended with respect to the timely release of prisoners" (*id.* ¶ 88); (3) "re-

arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated or dismissed" (*id.* ¶ 89); (4) "not accepting cash or surety bonds but instead outsourcing the payment and processing of these bonds to the Marion County Clerk" (*id.* ¶ 90); and (5) "not releasing inmates at the conclusion of their sentences, but rather keeping them in jail until Community Corrections[1] is 'ready' to process them as a group" (*id.* ¶ 84).  They seek to certify a class of all individuals who, from December 19, 2012, to the present, were held in confinement by the Sheriff after legal authority for those detentions ceased.  They also seek to certify five subclasses based on each of the five alleged policies and practices set forth above.

## II.   Rule 23 Requirements

Class action suits are governed by Federal Rule of Civil Procedure 23.  A party seeking class certification bears the burden of establishing that certification is appropriate.  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  The decision whether to grant or deny a motion for class certification lies within the broad discretion of the trial court.  *Id*.

Rule 23 prescribes a two-step analysis to determine whether class certification is appropriate.  First, a plaintiff must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.  *Clark v. Experian Info. Sols., Inc*., 256 Fed. Appx. 818, 821 (7th Cir. 2007); *Williams v. Chartwell Fin. Serv., Ltd.*, 204

---

[1] In their Motion for Class Certification, the Plaintiffs narrowed the subclass to those released to Community Corrections for electronic monitoring.

F.3d 748, 760 (7th Cir. 2000).  The failure to meet any one of these requirements

precludes certification of a class.  *Retired Chicago Police Ass'n*, 7 F.3d at 596.  Second,

the action must also satisfy one of the conditions of Rule 23(b).  *Clark*, 256 Fed. Appx. at

821; *Williams*, 204 F.3d at 760.  Plaintiffs seek certification under Rule 23(b)(3), which

permits class certification if "questions of law or fact common to class members

predominate over any questions affecting only individual members" and class resolution

is "superior to other available methods for failure and efficiently adjudicating the

controversy."

Under the predominance requirement of Rule 23(b)(3), common questions of law

or fact must predominate; in other words, there must be a common nucleus of operative

facts applicable to the entire class.  *Messner v. Northshore Univ. Healthsystem*, 669 F.3d

802, 815 (7th Cir. 2012).  The *Messner* court explained:

> If, to make a prima facie showing on a given question, the members of a
> proposed class will need to present evidence that varies from member to
> member, then it is an individual question.  If the same evidence will suffice
> for each member to make a prima facie showing, then it becomes a common
> question.

*Id.* (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

An analysis of the predominance requirement of Rule 23(b)(3) begins with the

elements of the underlying cause of action.  *Id.*  A Section 1983 *Monell* claim requires the

Plaintiffs to establish that: (1) they have suffered a violation of a constitutional right and

(2) the constitutional violation was caused by (i) an express municipal policy; (ii) a

widespread, though unwritten, custom or practice; or (iii) a decision by a municipal agent

with "final policymaking authority."  *Milestone v. City of Monroe, Wis.*, 665 F.3d 774,

5

780 (7th Cir. 2011) (citing *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 662, 629 (7th Cir. 2009)).

## III.   Discussion

Defendants oppose Plaintiffs' motion for class certification primarily because, they argue, individual questions predominate over class questions.  Fed. R. Civ. P. 23(b).  To give context to their specific argument, the court will provide a brief overview of the applicable law.

### A.   Cases Addressing Length of Detention

In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court held that an officer's "on-the-scene assessment of probable cause" justifies an arrest and "a brief period of detention to take the administrative steps incident to arrest."  *Id.* at 113-14.  But "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty."  *Id.* at 114.  "[T]his [judicial] determination must be made . . . promptly after arrest."  *Id.* at 125.  In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court clarified how "promptly" a judge must review the allegations, holding that a judicial determination of probable cause within 48 hours of arrest is presumptively reasonable.  *Id.* at 56.  A delay of more than 48 hours is presumed unreasonable, and the government bears the burden of showing the existence of a bona fide emergency or other extraordinary circumstance.  *Id.* at 57.  Ultimately, "the constitutionality of [any] detention depends on whether the length of delay between the time the Sheriff was notified that [the detainee should be released] and the time the

6

detainee was released was reasonable." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 515 (7th Cir. 2009).

With respect to class certification based on the constitutionality of the length of detention, two Seventh Circuit decisions guide the court's analysis. The first of these is *Harper*, *supra*. There, the Seventh Circuit reversed a district court's class certification of detainees who challenged the length of delay between the time bond was posted and the time that the detainee was released. *Id.* at 515. The court reasoned that the constitutionality of the detentions at issue depended on whether the length of the delay before the detainee's release was reasonable in any given case. *Id.* This determination depended on "how long each detainee was held after bond was posted and what justifications there might be for the delay on that particular day or for that particular detainee." *Id.* After noting various justifications that might exist for any given delay, it found that "[l]iability, to say nothing of damages, would need to be determined on an individual basis." *Id.* Thus, the court reasoned, "common issues do not predominate over individual issues, making this case inappropriate for class disposition." *Id.*

In the second, *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), the Seventh Circuit reversed a district court's decision to certify a Rule 23(b)(3) class in a case challenging the Chicago Police Department's allegedly unconstitutional detention of individuals detained for non-jailable offenses. *Id.* at 705. The plaintiffs argued that taking more than two hours to process and release those individuals constituted an unreasonable detention in violation of the Fourth Amendment. *Id.* The Seventh Circuit held that the district court erred in prescribing a two-hour limit to this process, and that

7

the plaintiffs needed to show "that any particular detention was excessive." *Id.* at 705. In determining whether a particular detention was excessive, the court would need to examine both the length of a given detention and the reasons why release was deferred. *Id.* Citing *Harper*, the court held that "common issues do not predominate." *Id.*

## B. Merits

According to Defendants, because Plaintiffs challenge the length of their detention after a court ordered them released from custody, Plaintiffs' motion for class certification is foreclosed by *Harper* and *Porter*. But as Plaintiffs correctly observe, *Harper* left open the possibility for plaintiffs in an "over-detention" case to obtain class certification so long as their challenge is to the constitutionality of common policies and practices that result in unreasonably long detentions. *See Harper*, 581 F.3d at 514 ("Failing to take issue with any particular intake procedure, Harper is left with a claim that the Sheriff is unconstitutionally holding detainees after bond has been posted."); *see also Otero v. Dart*, 306 F.R.D. 197, 203-04 (N.D. Ill 2014) (certifying class where definition and claims were modified to "focus on a specific detention procedure, rather than the length of detention"); *Donovan v. St. Joseph Cnty. Sheriff*, No. 3:11-cv-133-TLS, 2012 WL 1601314, at *7 (N.D. Ind. May 3, 2012) (certifying prisoner class because "[t]he overriding legal issue is whether the Defendant had a policy, practice, or custom in place that accounted for the length of the class members' detention").

Defendants respond that Plaintiffs' case cannot be certified on that ground because the alleged policies or practices they rely upon do not exist, or to the extent they do exist, they are constitutional and not the cause of any constitutional violations allegedly

8

experienced by the proposed class. "[A]s a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained." *Retired Chicago Police Ass'n*, 7 F.3d at 598; *see also Messner*, 669 F.3d at 811 ("In conducting [the Rule 23] analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."). Arguing the existence and constitutionality of the Sheriff's alleged policies and practices inappropriately touches upon the merits of Plaintiffs' Section 1983 *Monell* claims. Therefore, the court will focus its analysis on the propriety of class certification with respect to each of the five subclasses. *See Johnson v. Meriter Health Servs. Employee Retirement Plan*, 702 F.3d 364, 368 (7th Cir. 2012) (court applies Rule 23 requirements to each subclass). As noted by the *Johnson* court, "one can . . . think of this class action as actually [5] separate class actions and apply the standard in Rule 23(b)[(3)] to each of them." *Id.* at 368-69.

### 1.     72-Hour Release

First, Plaintiffs seek to certify a subclass based on the Sheriff's policy, practice, or custom of allowing Jail staff to hold inmates for up to 72 hours before releasing them. The problem with this subclass is twofold. First, the way the subclass is defined presupposes that some members of the class were detained less than 48 hours and others were detained more than 48 hours. But as noted above, the 48-hour line between the time one is ordered released from custody and the time he is released determines the reasonableness of a particular detention; less than 48 hours is presumptively reasonable and more than 48 hours is presumptively unreasonable. *McLaughlin*, 500 U.S. at 56-57.

Thus, those within the class would be subject to two different burdens of proof.  Second, a number of variables such as staffing levels during the time the inmate was to be processed; the number of holds on the inmate; the extent of the inmate's criminal history; the number of aliases used by the inmate; and whether there are any unusual circumstances present at the time the inmate is to be processed such as internet outages; can complicate the timing of a detainee's release.  Accordingly, common issues amongst the members of the subclass do not predominate.  Certification of this subclass is therefore **DENIED**.

### 2.    *Outsourcing Payment and Processing of Bonds*

Second, Plaintiffs seek to certify a subclass based upon the Sheriff's policy or practice of "not accepting cash or surety bonds but instead outsourcing the payment and processing of these bonds to the Marion County Clerk."  This policy or practice, they claim, led to an increase in processing times in violation of the Fourth Amendment.  Defendants respond that the Sheriff has never been involved in the payment and processing of bonds because, by statute, the payment and processing of bonds belongs to the Marion County Clerk.  Ind. Code § 35-33-8-3.2(a)(1)(A) and (a)(2)(A).  Plaintiffs did not reply to this argument, and appear to have conceded that this subclass should not be certified.  (*See* Filing No. 157, Plaintiffs' Reply, at 35 (omitting this subclass from the subclasses they seek to certify)).  Certification of this subclass is therefore **DENIED**.

### 3.      Employing an Inadequate Computer System

Third, Plaintiffs seek to certify a subclass based on the Sheriff's "employ[ment] of a computer system inadequate for the purposes intended with respect to the timely release of prisoners."

The computer system of which they complain is known as the Offender Management System ("OMS").  The Sheriff chose OMS as the means to integrate the Jail's IT functions with Odyssey—the Marion Superior Court's new electronic case management system which went "live" on June 1, 2014.  (Filing No. 119, Declaration of Derek Peterson ¶¶ 11-12, 14).  OMS was beset with technical issues, the most significant of which was its inability to interface with DEXTER, the computerized transfer system that would allow the various computer programs used by the stakeholders—the Indianapolis Metropolitan Police Department, the Marion County Sheriff's Office ("MCSO"), the Public Defender's Office, Community Corrections, and the Prosecutor's Office—to exchange information with each other on Odyssey.  (*Id*. ¶ 13).  As a result, the MCSO did not receive electronic court information when the new system went live.  (*Id*. ¶ 14).  This technical issue required the MCSO to rely upon automated reports from Odyssey sent from the Courts on an hourly basis, that listed all of the event codes—e.g., setting of bond—regardless of custody status.  (*Id*.).  Those codes were then manually updated and processed by MCSO staff.  (*Id*.).  The MCSO also had to rely on emails, paper records, faxes, and telephone calls to gather information to make release decisions. (*Id*.; Filing No. 116-3, Deposition of Tammy Wood at 12-13, 41).  Suffice it to say that release times increased.

As the court understands the subclass, it consists of all individuals who, from December 19, 2012 to the present, were victims of the computer issues spawned by OMS.  To certify a class, however, the plaintiff must establish "that the class is indeed identifiable."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  In other words, "the description of a class [must be] sufficiently definite to permit ascertainment of the class members."  *Alliance to End Repression v. Rockford*, 565 F.2d 975, 977 (7th Cir. 1977).  The definition of the subclass that Plaintiffs advance is problematic because the technical issues plaguing OMS is one of the overriding *reasons* for the over-detention of the *entire* class.  As such, the court is not convinced it is a policy or practice from which this subclass can be anchored.  Certification of this subclass is therefore **DENIED**.

### 4.    Re-arresting and Imprisoning Individuals

Next, Plaintiffs seek to certify a class based on the Sheriff's policy of re-arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated or dismissed.  Defendants respond that these inmates are not re-arrested or re-imprisoned; rather, they are returned to the Jail for processing.  If no other holds exist, Defendants claim, the inmate will be released.  Because Defendants do not deny that members of the subclass were returned to the Jail after a court ordered their release, Defendants' alleged practice is common to the subclass.  *See* Fed. R. Civ. P. 23(a)(2).  The question of the constitutionality of this practice is also common to the subclass.

The court further finds the subclass meets Rule 23(b)(3)'s predominance requirement as a "'common nucleus of operative facts and issues' underlies the claims

brought by the proposed class." *Messner*, 669 F.3d at 815 (quoting *In re Nassau Cnty.*
*Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)).  Certification of this subclass is
therefore **GRANTED**.

### 5.     Keeping Inmates Imprisoned Who the Courts Released to Community Corrections for Electronic Monitoring

Lastly, Plaintiffs seek to certify a subclass based on the Sheriff's policy of keeping
inmates imprisoned after the courts have released them to Community Corrections for
electronic monitoring.  The representative of this subclass, Mr. Shofner, testified by
affidavit that, after he served the jail portion of his sentence, the Jail did not release him
to report to Community Corrections.  (Shofner Aff. ¶ 16).  He was told the Jail keeps
inmates until Community Corrections is ready to process a group of such individuals
because in the past, some inmates failed to report.  (*Id.* ¶¶ 16, 19).  Defendants do not
deny the existence of this policy.  Instead, they offer the affidavit of John Dieter, the
Director of Marion County Community Corrections, who said that due to Jail population
pressures, Community Corrections has employed the services of its electronic detention
equipment vendor to "provid[e] inmates with electronic detention equipment after hours
and on weekends to get those inmates out of the Jail sooner."  (Filing No. 117,
Declaration of John Dieter ¶ 7).  The application of the policy to the subclass and the
constitutionality of the policy are questions common to the subclass.  The court therefore
finds the subclass meets not only the commonality requirement, but also the
predominance requirement of Rule 23(b)(3).  Certification of this subclass is therefore
**GRANTED**.

**IV.    Conclusion**

Plaintiffs' Motion for Class Certification is **GRANTED in part** and **DENIED in part** (Filing No. 71).  Plaintiffs' motion is **GRANTED** with respect to the subclasses defined as:  All individuals who, from December 19, 2012, to the present, were held in confinement by the Sheriff after legal authority for those detentions ceased due to the Sheriff's policies or practices of: (1) re-arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated or dismissed; and (2) keeping inmates imprisoned who the courts have released to Community Corrections for electronic monitoring.

Plaintiffs' motion is **DENIED** with respect to the subclasses defined as:  All individuals who, from December 19, 2012, to the present, were held in confinement by the Sheriff after legal authority for those detentions ceased due to the Sheriff's policies or practices of: (1) operating under a standard of 72 hours to release prisoners who are ordered released; (2) not accepting cash or surety bonds but instead outsourcing the payment and processing of these bonds to the Marion County Clerk; and (3) employing a computer system inadequate for the purposes intended with respect to the timely release of prisoners.

**SO ORDERED** this 30th day of September 2016.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

14

Distributed Electronically to Registered Counsel of Record.