Richard G. Kiekbusch, Ph.D.
2825 Goddard Place
Midland, Texas 79705
Telephone: (432) 552-2357 or 520-4516
E-mail: kiekbusch_r@utpb.edu

Re: <u>Driver, et.al. v. Marion County Sheriff, et.al.</u>

## I.   BIOGRAPHICAL SUMMARY

I am an Associate Professor of Criminology at the University of Texas – Permian Basin in Odessa, Texas. I hold a BA, MA and Ph.D., all in Sociology, from the University of Notre Dame. I have over 20 years experience in correctional administration – including 13 years in jail management in Washington State, Virginia, and North Carolina. I am active in a number of professional associations, and I was President of the American Jail Association 1992-1993. In addition to carrying out my academic responsibilities, I provide expert witness and other consulting services in the area of jail management. I also serve on the editorial boards of several practitioner publications and scholarly journals.

## II.   PLAINTIFFS' COUNSEL'S REQUEST

I have been asked by plaintiffs' counsel to offer opinions with respect to the following two questions:

A. From the standpoint of sound jail management, was it reasonable for the Marion County Sheriff's office to acquire and continue to use an inmate management information system that is not compatible with the case management information system used by Marion County's Criminal courts?
B. Is the amount of time generally required by the Marion County Sheriff's Office to release jail inmates who have posted bond or who have been court – ordered released unreasonably excessive?

## III.   OPINIONS

A. From the standpoint of sound jail management, it was **not** reasonable for the Marion County Sheriff's Office to acquire and continue to use an inmate management information system that is not compatible with the case management information system used by Marion County's criminal courts.
An essential part of sound jail management is the timely release of prisoners following the posting of bond or the issuance of a court order to release. The Sheriff's acquisition and continued use of OMS has severely compromised the ability of his jail staff to perform this critically important function.



1

B. The amount of time generally required by the Marion County Sheriff's Office to release jail inmates who have posted bond or who have been court-ordered released **is** unreasonably excessive.

Based upon the testimony given in this case by the defendants and others, as well as my own experience, any Marion County prisoner held for more than 4-6 hours following the posting of bond or the issuance of a court order to release has been unreasonably detained.

## IV. REASONS FOR OPINIONS

### A. Incompatible Management Information Systems:

1. For the most part, jails admit, continue the confinement of, and release prisoners in response to orders from judicial officers.
2. The efficient communication of its orders by the courts and the timely and compliant response by the jails is critically important as this transmission of decision-making involves incarceration and deprivation of liberty.
3. If a jail communicates electronically with the courts, it is imperative that, prior to the acquisition of an automated inmate management system, jail officials carefully ensure its compatibility with the automated case management system used by the courts.
4. The defendants and others have testified to the absolute necessity of such inter-agency compatibility and the absence of same in Marion County:

    a. Sheriff John Layton acknowledged the absolute necessity of compatibility between his Office's inmate management system and the case management system used by the County's criminal courts. (Layton deposition, 59)
    b. Col. Louis Dezelan, the chief administrative officer in the Sheriff's Office, concurred with Sheriff Layton regarding the need for systems compatibility. (Dezelan deposition, 12-13)
    c. Geneva Roembke, who handled Sheriff's Office computer applications for the City/County Information Services Agency (ISA), asserted that, prior to the acquisition of a jail management information system, it makes common sense to verify its compatibility with the courts' management information system. (Roembke deposition, 30, 43)
    d. Sheriff Layton testified that his Office's inmate management system (OMS) is not compatible with the courts' case management system. (Odyssey) (Layton deposition, 53-54)
    e. Amitav Thamba, Chief Technology Officer for the Marion County Superior court, concurred with Sheriff Layton regarding this systems incompatibility. (Thamba deposition, 13)
    f. Marion County's current jail commander, Lt. Col. James Martin, also acknowledged the incompatibility of OMS and Odyssey, as well as its damaging impact on the Sheriff's Office's Records function and its procedures for releasing prisoners. Sheriff's Office staff are required to "go through stacks of paperwork by hand to

2

    make sure they were making the right decision" and prisoner releases were being delayed as a result. (Martin deposition, 23-24)

  g. Derek Peterson, Chief Information Officer (CIO) for the Sheriffs' Office, provided a chronological summary of events associated with OMS/Odyssey incompatibility. (Peterson declaration, paragraphs 4-18) and testified that problems with the OMS conversion continued into 2016 (Peterson deposition, 64).

  h. In early 2015, Sheriff Layton hired a consultant, Dr. Jon Padfield, to review OMS, compare it with other jail management information systems, and advise as to its effectiveness for use in Marion County. Dr. Padfield, along with CIO Peterson, conducted a thorough review of OMS. In their review, Dr. Padfield and Mr. Peterson assessed the extent to which OMS satisfied the software requirements of the Sheriff's Office with respect to processing inmates into and out of the jail system. They found OMS significantly lacking. (Padfield deposition 2-13-18, 5-8, 12-25, exhibits 53 and 135). Consultant Padfield also testified that the Dexter interface was necessary because the courts' Odyssey system and OMS did not communicate. (Padfield deposition 2-13-18, 24)

5. Systems incompatibility can result in, among other things, the detention of inmates beyond their legally mandated release times.

6. The defendants and others have testified to the persistent prevalence of such wrongful detention in Marion County, a situation they say is substantially attributable to the incompatibility of the case management and inmate management software used by the County's Criminal Courts and the Sheriff's Office, respectively:

  a. Lt. Col. Martin acknowledged that prisoner releases were being delayed and prisoners were backed up in the jail due in large part to OMS/Odyssey incompatibility and the resulting need for Sheriff's Office Records staff to manually check release-related paperwork. (Martin deposition, 23-24)

  b. Former jail commander Royce Cole noted that average prisoner release times for the Marion County jails increased substantially with the June 2014 implementation of OMS. (Cole deposition, 13)

  c. Bondsman Mark Thompson testified that, whereas historically it took 2-4 hours to release a prisoner who had posted bond, it has taken 2-3 days since about June 2014. (Thompson affidavit, paragraphs 5, 10). Bondsman Byron Frierson testified similarly. (Frierson affidavit, paragraph 5)

  d. Chief Information Officer Peterson referred to "significant" and "alarming" delays in the prisoner release process due to OMS implementation and the resulting manual checking of release eligibility by Sheriff's Office Records staff. (Peterson declaration, paragraph 18)

  e. At the June 2014 meeting of the Marion County Community Corrections Advisory Board, Col. Dezelan spoke briefly regarding the rise in Marion County Jail numbers due to a new offender maintenance system. (Minutes, 6-28-14)

3

f. Col. Dezelan later testified to an immediate spike in the inmate population following the June 2014 implementation of OMS and surmised that the spike may have been attributed to OMS/Odyssey incompatibility. (Dezelan deposition, 50-51, 92)

g. In June 2014, the month during which OMS was implemented, Major Tammy Wood, who was in charge of the Sheriff's Office's Records Section, reported to then-jail commander Cole that people were really backing up in the jail because the computer system was not working. (Cole deposition, 14-15)

h. Chief Information Officer Peterson, in referring to inmate population charts prepared by Col. Dezelan, noted an immediate spike in the inmate population associated with the June 2014 implementation of OMS. (Peterson deposition, 46)

i. Mr. Peterson also reported receiving communication, after the June 2014 installation of OMS, from public defenders and the courts complaining of inmates who had been ordered to be released but who were still in custody, several 3-6 days after issuances of the court orders. Mr. Peterson acknowledged that such delays were a common occurrence in 2014. (Peterson deposition, 146-17)

j. Consultant Podfield testified that, in the process of conducting the aforementioned OMS review with Mr. Peterson, stakeholders (presumably including Jail staff) told him that OMS was impacting their ability to effectively and efficiently process inmates out of the Jail. (Padfield deposition 2-13-18, 26)

k. While there has been some improvement, delayed inmate releases continue to be a problem in Marion County. (Peterson deposition, 64, 79-80, 147; Cole deposition, 14-15; Martin deposition, 24; Thamba memo, 1-3; Thamba deposition, 23-24)

l. The Thamba memo cited in k above, was a November 21, 2017 communique from Mr. Thamba to the Marion County Superior Court's Criminal Division judges. In his memo, Mr. Thamba provides data on the 22 persons who posted bond on November 17, 2017 and the number of hours that transpired before they were subsequently released from custody:

| 46:00 | 1 | 23:00 | 1 | 17:00 | 1 |
| --- | --- | --- | --- | --- | --- |
| 43:00 | 1 | 22:00 | 3 | 14:00 | 1 |
| 36:00 | 1 | 21:00 | 1 | 7:00 | 2 |
| 34:00 | 1 | 20:00 | 1 | 6:00 | 1 |
| 26:00 | 2 | 19:00 | 4 | 1:32 | 1 |
|  |  |  |  |  | 22 |

Mr. Thamba also mentions in his memo another, presumably information system-related issue—prisoners not being brought to court for appearances following the issuances of a transport orders.

m. Former Sheriff's Office Records Supervisor Rachel Coss testified in January 2018 that the incompatibility between OMS and the courts' Odyssey system initially caused delays in some inmate releases and that the problem continues today (Coss deposition, 8, 26, 14).

7. The Sheriff, who acquired his Office's new inmate management system (OMS) at no cost through the jails' inmate telephone service provider (Global Tel*Link, or GTL), failed to go through customary vetting procedures for such acquisitions, neglected to ensure the compatibility of OMS with the courts' case management system (Odyssey), and continues to use OMS contrary to the recommendations of the County's Superior Court judges, his own staff, and his own consultant:
    a. The Sheriff's office acquired OMS at no cost through the jails' inmate telephone services provider, GTL. (Dezelan deposition, 20; Peterson deposition, 108)
    b. Chief Technology Officer Thamba testified that he had been told that GTL had offered OMS free of charge to the Sheriff in exchange for an extension of GTL's inmate telephone services contract. (Thamba deposition, 16).
    c. Prior to the acquisition, the Sheriff's Office had issued no requests for bids or proposals for a new inmate management system to replace JIMS, the system the Office had been using. (Dezelan deposition, 27-28)
    d. ISA Applications Manager Roembke testified that she had not been involved in any vetting of OMS for the Sheriff's Office. (Roembke deposition, 8, 45)
    e. Chief Information Officer Peterson stated he was unaware of anyone having checked OMS/Odyssey compatibility before acquisition of OMS by the Sheriff's Office. (Peterson deposition, 110)
    f. Sheriff Layton continues to use OMS despite the fact that the judges, court staff, his own consultant, and those members of his own staff who are most responsible for the timely release of jail inmates have recommended that it be replaced with the Odyssey-compatible inmate management system available from Tyler Technology. (Peterson deposition, 204-208; Thamba deposition, 17-19) Of note, Odyssey is a product of Tyler Technology. (Thamba deposition, 10)
    g. Mr. Thamba testified that Mr. Peterson and several others in the Sheriff's Office are of the opinion that Sheriff Layton ought to replace OMS with Tyler Technology's jail module. (Thamba deposition, 28)
    h. Mr. Thamba further testified that there is an established City/County process to ensure the compatibility of new hardware and software with existing systems; that he had not participated in the process with respect to OMS; and that he was unaware of OMS-related involvement in that process by ISA staff or staff of the Sheriff's Office. (Thamba deposition, 92-93)
    i. In mid 2015, Consultant Padfield, Chief Information Officer (CIO) Peterson, Jail Commander Lt. Col. James Martin, and Inmate Records Supervisor Major Tammy Wood visited Fulton County (Atlanta), Georgia to observe that County's use of Tyler Technology's Odyssey Jail Management System. In conjunction with the trip, in his 2-13-18 deposition, Dr. Padfield testified that: the courts were recommending that the Sheriff switch over to the Tyler Technology product (35, 37); it was his understanding that CIO Peterson was going to recommend the same to the Sheriff (36); he had told CIO Peterson that switching over to the Odyssey Jail Management System would be a good move because of the deficiencies with OMS (36-37); and he was of the impression that CIO Peterson, Lt. Col. Martin, and Major Wood were all in agreement with him (37-38).

  j. On 4-13-15, the four Marion county Superior Court judges sent a letter to Sheriff Layton supporting the acquisition of Tyler Technology's Jail Management System by the Sheriff's Office. In the letter, the judges noted that the Courts' Information Technology staff concurred. Among the benefits identified with respect to such acquisition were compatibility with the Courts' Odyssey Case Management System and a decrease in delayed releases of defendants who had been court-ordered released. A copy of this letter was subsequently e-mailed to Col. Dezelan, Major Wood, and Kevin Murray (the Sheriff's outside attorney) by CIO Peterson. (Padfield deposition 2-13-18, exhibit 57)

**B. Unreasonably Excessive Release Delays:**

1. The defendants in this lawsuit and others have testified to the extended amount of time it often takes jail staff to release prisoners following the posting of bond, the issuance of a court order to release, or the completion of a sentence:

    a. Sheriff Layton does not dispute plaintiffs' evidence that each of the five proposed class representatives was held days past the authorizations of their respective releases by the courts; he does not offer any explanation as the why it took his jail staff so long to effect these releases; he does not contend that the experiences of these five were atypical; and he has admitted that each of these five releases, subject to information about which he is unaware, was unreasonably delayed. (Layton deposition, 21, 31, 34-37, 41-43, 49)
    b. Bondsmen Thompson and Frierson reported that, since about June 2014, the time required to release a Marion County inmate who has posted bond is 2-3 days. (Thompson affidavit, paragraph 10; Frierson affidavit, paragraph 5; Thompson deposition, 9; Frierson deposition, 6, 15)
    c. Former jail commander Cole testified that it should take Marion County jail staff no more than 3-4 hours to release inmates unless they have to simultaneously contend with various interruptions (eg, inmate fights, other disruptions, meal time), which might extend release processing to 5-6 hours. (Cole deposition, 11, 33-34)
    d. There continue to be delayed releases of up to 46 hours for inmates who have posted bond. (Thamba memo, 1-3)
    e. Shannon Logsdon, a Master Commissioner with Superior Court 12, wrote Mr. Thamba a letter December 11, 2014 in which she conveyed the ongoing problem of inmates remaining in jail for days beyond their court-ordered release dates. She further expressed her concerns that such persistent delayed releases could result in costly liability exposure and jail crowding, Mr. Thamba responded on the same date that he agreed with her concerns, and he also communicated these concerns to the Sheriff's Office on that date. (Thamba deposition, 21-23)

2. The length of time it takes to release Marion County inmates following posting of bond, issuance of a court order to release, or completion of sentence is significantly longer than

6

the time it takes in counties adjacent to Marion County, in other Indiana counties, and in my experience in jail administration:

    a. Bondsmen Thompson and Frierson reported that in five counties bordering Marion County (Boone, Hamilton, Hendricks, Johnson, and Morgan Counties) it takes from 15 minutes to two hours to get a detainee released (Thompson affidavit, paragraph 13; Frierson affidavit, 9)

    b. Former jail commander Cole testified that, based upon his conversations with other Indiana jail commanders, other Indiana jails generally release inmates in two hours or less. (Cole deposition, 45-46)

    c. Absent extenuating circumstances (eg, inmate fights, multiple releases) which may on occasion delay releases, the release time frames reported by Mr. Cole are consistent with my experience in jail management.

## V. INFORMATION CONSIDERED

In preparing my opinions and my reasons for those opinions, as articulated in sections III and IV above, I reviewed the following documents:

(1) Plaintiffs' Third Amended Class Action Complaint (5-5-15)
(2) Entry on Plaintiffs' Motion for Class Certification, United States District Court for the Southern District of Indiana, Indianapolis Division (9-30-16)
(3) Appellate Court's decision on plaintiffs' petition for permission to appeal District Court's decision on plaintiffs' motion for class certification, United States Court of Appeals for the Seventh Circuit (10-13-16)
(4) A Review of Inmate Release Procedures at the Marion County Jail, Jon R. Padfield, Ph.D. (10-12-14)
(5) Declaration of Derek Peterson (4-29-16)
(6) Affidavit (4-10-15) and deposition (4-7-16) of Byron Frierson
(7) Affidavit (4-23-15) and deposition (11-19-15) of Mark Thompson
(8) Deposition of Royce Cole (6-2-16)
(9) Deposition of John Layton (12-8-15)
(10) Deposition of Geneva Roembke (6-3-16)
(11) Depositions of Jon Padfield (12-8-17, 2-13-18)
(12) Deposition of James Martin (6-3-16)
(13) Deposition of Louis Dezelan (4-8-16)
(14) Deposition of Derek Peterson (5-2-16)
(15) Letter, Marion County Superior Court judges to Sheriff John Layton (4-13-15)
(16) Deposition of Amitav Thamba (7-18-16)
(17) Memo, Amitav R. Thamba to MSC Criminal Division (11-21-17)
(18) Deposition of Rachel Coss (1-29-18)
(19) Minutes of Marion County Community Corrections Advisory Board meetings (6-28-14, 8-21-14)

## VI. CONCLUSION

A. My opinions and my reasons for theses opinions are subject to revision if new information is brought to my attention.
B. Attached to this report are:
   1. A list of all my publications for the last 10 years (Attachment A);
   2. My fee schedule (Attachment B); and
   3. A list of the cases in which I have testified in the last four years.

*[signature]*

Richard G. Kiekbusch, Ph.D.
Midland, Texas
July 17, 2018

ATTACHMENT A

My publications in the last 10 years:

- Managing Suicidal Inmates in the Jail Setting, CORRECTIONS MANAGERS' REPORT, October/November 2017, 1-2, 42-45.
- Managing Suicidal Inmates in the Jail Setting, CORRECTIONAL HEALTH CARE REPORT, July/August 2017, 1-2, 79-82.
- Influencing the Conduct of Line Officers: Some Tips for Chief Executives, CORRECTIONS MANAGER'S REPORT, June/July 2014, 1-2, 14-15, with Ray J. Leible, Reprint of an article that had originally appeared in CORRECTION MANAGER'S REPORT, Oct./Nov. 2004.
- Corrections Classics: Prison Evaluation in Lean Economic Times: Some Suggestions, CORRECTIONS MANAGERS' REPORT, February/March 2014, 65-66, 70, 72, 79. Reprint of an article that had originally appeared in CORRECTIONS MANAGERS' REPORT, April/May 2003.
- Corrections Classics: Jail Safety: Begin With Roll Call, CORRECTIONS MANAGERS' REPORT, Aug/Sept. 2013, 19-21. Reprint of an article that had originally appeared in CORRECTIONS MANAGERS' REPORT, Oct./Nov. 2000.
- Corrections Classics: Be a Role Model, CORRECTIONS MANAGERS' REPORT, April/May 2013, 81-82, 93-94. Reprint of an article that had originally appeared in CORRECTIONS MANAGERS' REPORT, June/July 2002.
- Corrections Classics: Dealing with the Reality of Politics in Corrections, CORRECTIONS MANAGERS' REPORT, Dec./Jan. 2013, 51-52. Reprint of an article that had originally appeared in CORRECTIONS MANAGERS' REPORT, Aug./Sept.1997.
- It Just Depends, guest editorial on the jail profession and higher education in AMERICAN JAILS, January/February 2012, 5.
- Recognizing the Suicidal Inmate and Preventing Jail Suicides, CORRECTIONS MANAGERS' REPORT, December/January 2010, 51-56. Reprint of Chapter 12 in Stojkovic, S. (E.), MANAGING SPECIAL POPULATIONS IN JAILS AND PRISONS, Vol. 2, 2010.
- Managing Suicidal inmates in the Jail Setting, in Stojkovic, S. (E.), MANAGING SPECIAL POPULATIONS IN JAILS AND PRISONS, Vol. 2, 2010, Kingston, N.J.: Civic Research Institute, Chapter 12.
- Correctional Leadership in the 21st Century, in Schmalleger, F. and Smykla, J., CORRECTIONS IN THE 21ST CENTURY, 2009 (4th ed.), New York, NY: McGraw Hill, 385-386.
- The Jail and the University: make it Worth Their Whiles, AMEICAN JAILS, November/December 2008, 43, 45-48.
- Politics and American Corrections, In Stojkovic, S, Kalinich, D., and Klofas, J. (Eds.), CRIMNAL JUSTICE ORGANIZATIONS: ADMINISTRATION AND MANAGEMENT, 2008 (4th ed.), Belmont, CA: Thomas/Wadsworth Publishing Co., 203.

9

## ATTACHMENT B

My fee schedule:

- Initial Review: $1,000
- Standard Work: $200/hour
- Testimony (deposition or trial): $250/hour

## ATTACHMENT C

I have testified in the following cases in the last four years:

- Jordan v. City of Los Angeles, Superior Court of California, County of Los Angeles (deposition only)
- Gann v. Montgomery County et.al., U.S. District Court for the Southern, District of Texas, Houston Division (deposition only)
- Pinnock, et.al. v. Board of County Commissioners of Grant County, et.al., U.S. District Court for the District of New Mexico (deposition only)
- Tammy Christine Hanson v. Baxter County, Arkansas, et.al., U.S. District Court for the Western District of Arkansas, Harrison Division (deposition only)
- Santos v. Liberty County, Texas, et.al., U.S. District Court for the Eastern District of Texas, Beaumont Division (deposition only)
- King v. LaCrosse County and Kramer, U.S. District Court for the Western District of Wisconsin (deposition only)
- Kretek v. Board of Luna County Commissioners, et.al., U.S. District Court for the District of New Mexico (trial only)
- Allen,et.al. v. Freeman, et.al., U.S. District Court for the Southern District of Georgia, Augusta Division (deposition only)
- Mark Young v. Burlington County, et.al., Superior Court of New Jersey, Law Division-Burlington County (deposition only)
- Lawrence Thomas v. Cumberland County, et.al., U.S. District Court for the District of New Jersey, Camden Vicinage (trial only)