UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL DRIVER, TERRY CLAYTON, MICHAEL BOYD, NICHOLAS SWORDS, and ROY SHOFNER, individually and as representatives of a class of all similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> THE MARION COUNTY SHERIFF, and THE CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) No. 1:14-cv-02076-RLY-MJD ) ) ) ) ) ) ) |

**DEFENDANTS' BRIEF IN SUPPORT OF EMERGENCY MOTION TO EXCLUDE PLAINTIFFS' NEW AND UNTIMELY EXPERT REPORT**

**The Current Problem Created by Plaintiffs**

Defendants are filing this motion because Plaintiffs, on the eve of trial, have filed a brand-new expert report that changes their experts' methodology and verification methods. Not only does this last-minute change jeopardize the trial date (after *six years* of litigation) but will require a huge expenditure of local tax dollars if left unresolved because Defendants' experts will have to re-do much of their work (and not for the first time because Plaintiffs were already given leave to change their experts' report before). Plaintiffs' deliberate actions to once again play fast and loose with the discovery rules must be addressed and quickly.

**Facts Involved in Current Dispute**

In an attempt to solve the problem of identifying inmates who were supposedly over-detained in order to meet their class certification burden, Plaintiffs retained Dr. Sandy and Steve

Henderson to construct a database that conjoined the Odyssey and OMS systems and then generated a list of all inmates and their detention times. Another of Plaintiffs' experts, Alison Shine, then attempted to conduct the required validation of the database results by, among other things, checking that information against information about criminal cases contained in certain publicly available databases.

As part of their preparation for trial, Defendants retained a database design expert, Brian D'Andrade, Ph. D., to closely examine the work of Plaintiffs' experts.

As this Court may recall, Defendants previously sought to exclude Plaintiffs' experts because their methodology was flawed and because they failed to disclose information in reaching their conclusions. The issue here, however, is new. But, to briefly put the current dispute in the proper context, Plaintiffs initially disclosed their expert opinions on August 6, 2018. (Filing No. 351-2.) After Defendants conducted expert discovery, Dr. D'Andrade issued his own report on January 31, 2019. Filing No. 351-3.

After Dr. D'Andrade produced that report, Plaintiffs produced over 100 versions of the computer scripts they developed in trying to conduct their analysis of the data—data that was critical to Dr. Andrade's work. That late production on March 5, 2019, required Defendants to seek leave from this Court to submit a supplemental report from Dr. D'Andrade containing a new analysis of this previously withheld material and how it showed the flaws in the Sandy Report.

Plaintiffs sought and obtained leave from this Court to file what they said would be a rebuttal to Dr. D'Andrade's supplemental report. Instead, they filed on May 10, 2019, a report that contained new validation efforts in order to try and correct some of the flaws identified by Dr. Andrade. (Filing No. 351-5).

2

Denying Defendants' motion to exclude the report, this Court allowed Plaintiffs to proceed with that new report. That report formed the basis for Defendant's trial preparation since that time. Now, on the eve of trial, Plaintiffs filed an amended expert report on September 23, 2020, that purports to identify an additional 8,000 members of the class who were over-detained.

Plaintiffs contend that this supplemental report was needed because the experts' May 10, 2019 report was based on inmate stay data that only went from July 2014 through a portion of 2017. Plaintiffs stated that they needed to prepare this supplemental report to include new OMS and Odyssey data that runs through a portion of 2020. Defendants did not oppose that position given this Court's previous rulings on the admissibility of Dr. Sandy's May 2019 report.

The problem now is that Dr. Sandy and his team did not just take the new data and apply the methods addressed in the May 10, 2019 report. Had they done only that, Defendants would not have filed this motion. *Instead, they have altered the computer program and its algorithm used by them to try and determine whether in fact the class members were over-detained.*

Plaintiffs' methods for analyzing the data and verifying the results are at the very heart of this litigation. This last-minute change, if allowed by this Court, greatly prejudices the Defendants and will require Defendants' expert to examine Plaintiffs' experts' work a **third time** at a very significant expense and will require delaying the trial for likely another year—something the Defendants, this Court, and presumably the class members do not want.

This Court should prevent Plaintiffs from making this last-minute change and require that any new class members be identified using Plaintiffs' already-examined methodology so this case can finally go to trial as scheduled in January.

3

## Argument

**A. Plaintiffs admit that their third expert report is based upon new, altered computer scripts and an algorithm that are different from those used as the foundation for the May 2019 Sandy Report that identified the current 10,726 inmates who form the current class.**

Defendants' expert testifies in the attached declaration, and Plaintiffs' experts admit, Dr. Sandy and his team changed the computer scripts and algorithm used in the new report that supposedly identifies over 8,000 new inmate over-detentions. Dr. Sandy identifies four ways their methods have changed from the May 10, 2019 report that identifies the 10,276 inmates that now comprise the class as this Court has defined it. (D'Andrade Decl, ¶ 7.)

These last-minute changes to Plaintiffs' methodology will require Dr. D'Andrade to re-do his work at a cost of approximately $135,000. (*Id.* at ¶ 10.) Further, this change will almost certainly prevent Defendants from being ready for the January trial date given that trial is just three months away. (*Id.* at ¶ 10.)

**B. Plaintiffs should not be permitted to change their methodology again after this Court already permitted them to do so at a significant expense to Defendants. Doing so now will force a delay in the trial and create significant prejudice to Defendants.**

Rule 26(a)(2)(B) requires that the expert's report must contain:

(i) A complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) The facts or data considered by the witness in forming them;

(iii) Any exhibits that will be used to summarize or support them;

Timely disclosure of this information is critical. Otherwise, a defendant will be prejudiced in its ability to analyze and assess an expert's methods to determine whether that expert's work meets the minimum standards established in *Daubert* and will be unable to defend itself at trial. The

4

Supreme Court explained the importance of being able to reproduce an expert's conclusion by using and testing that expert's data and methods:

> Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993) (citations and internal quotations omitted).

Here, Plaintiffs produced their initial report in 2018. Defendants promptly sought all discoverable information underlying the experts' conclusions in that report. After Dr. D'Andrade completed his work, he had to do much of that work over again when Plaintiffs initially withheld and then produced later a huge amount of data considered by their experts. Defendants sought to exclude this untimely report, but this Court permitted Plaintiffs to proceed with their new report, finding that Defendants' were not prejudiced by this delay as the trial date was not looming.

That is not the case now. The trial is now set for January. But, Plaintiff apparently decided that since this Court allowed them to change their expert methodology before without any adverse consequence, they could do so again on the eve of trial.

This Court should not allow Plaintiffs to provide a new report with a new methodology under the guise it is just a "supplement". *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify."); *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371-72 (5th Cir. 2016) (ability to supplement does not exist to give parties a de facto extension of the disclosure deadline); *E.E.O.C. v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015)

5

(party cannot use Rule 26(e) "as a loophole" to revise previous reports); *Williams v. TESCO Services, Inc.*, 719 F.3d 968, 976 (8th Cir. 2013) (supplemental report rejected because it "was materially altering, not merely clarifying his original report"); *Martinez-Serrano v. Quality Health Services Of Puerto Rico, Inc.*, 568 F.3d 278, 282–83 (1st Cir. 2009) (rejecting "addendum" that attempted to assert a new theory of liability). *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983 (N.D. Cal. 2014) ("Defendant was entitled to a complete disclosure of all opinions—not a sneak preview of a moving target."); *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008) ("Rule 26(e) does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report").

Allowing in this new report now, on the eve of trial, would be grossly unfair for the reasons set forth below. Further, Defendant's proposed remedy is more than fair.

    **C. Defendants' proposed remedy for Plaintiffs' latest violation of Rule 26 – allowing Plaintiffs to include additional members to the class but requiring that they do so using their previous methodology that Dr. D'Andrade and this Court already examined – avoids undue prejudice to Defendants, preserves the trial date, and protects the claims of additional class members while also preventing Plaintiffs from taking unfair advantage of this Court's previous leniency.**

Should this Court allow Plaintiffs to amend their report at all, it should do so only by permitting Plaintiffs' expert to identify additional class members from the new OMS and Odyssey data using the methods already reviewed by Dr. D'Andrade and this Court in their May 2019 report. By doing so, any potential class members that may be identified in the new OMS and Odyssey data will be able to proceed with their claims at the January trial. At the same time, Defendants will be spared the six figure expense of analyzing Plaintiffs' new methods. This approach will also—it is hoped—prevent the need to continue the January trial date. Finally, at the

6

same time, this remedy will prevent the Plaintiffs from taking advantage of this Court's previous ruling which allowed their experts to continue being a moving target.

## Conclusion

Defendants request that this Court either strike Plaintiffs' September 23, 2020 report in its entirety or require Plaintiffs' experts to review the new Odyssey and OMS data using the methods described in their May 2019 report. If the latter, Defendants requests that this Court order that work to be completed by November 16, 2020. Further, Defendants request that Plaintiffs' expert sit for a deposition—at Plaintiffs' expense—to confirm compliance with this Court's order on this motion.

FROST BROWN TODD, LLC


 /s/ *Anthony W. Overholt* 
Anthony W. Overholt, #16481-49
201 N. Illinois St., Suite 1900
Indianapolis, IN  46204
Tel. (317) 237-3800
Fax (317) 237-3900

Attorneys for Defendant

7

## CERTIFICATE OF SERVICE

I hereby that on this 16th day of October, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Richard A. Waples | John Young |
| Waples & Hanger | Young & Young |
| 410 N. Audubon Road | 128 N. Delaware St., 3rd Floor |
| Indianapolis, In 46219 | Indianapolis, IN 46204 |

                                         /s/*Anthony W. Overholt*
                                         Attorney for Defendant

LR02314.0629431   4822-4193-8895v1