IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL DRIVER, TERRY CLAYTON, MICHAEL BOYD, NICHOLAS SWORDS, and ROY SHOFNER, individually and as representatives of a class of all similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> THE MARION COUNTY SHERIFF, and THE CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY, <br><br> Defendants. | Cause No. 1:14-cv-02076-RLY-MJD |

**DEFENDANTS' BRIEF IN SUPPORT OF RENEWED MOTION TO EXCLUDE PLAINTIFFS' EXPERTS OR IN THE ALTERNATIVE TO REQUIRE PLAINTIFFS' COMPLIANCE WITH THIS COURT'S PREVIOUS ORDER OF NOVEMBER 5, 2020**

### I.    Summary of the Current Dispute

**A. Defendants filed this motion because of Plaintiffs' failure to follow Court imposed deadlines and this Court's Order of November 5, 2020.**

Plaintiffs have been working for years to develop a method to show what they claim are class-wide over-detentions due to IT problems associated with the Marion County Superior Courts' move from their old case management system, JUSTIS, to their new system, Odyssey, and the related move from JIMS to OMS by the Marion County Sheriff's Office ("MCSO").

Plaintiffs produced one of their attempts to present a viable methodology on September 23, 2020, that supposedly takes the Court's Odyssey data and the MCSO's OMS data, and then mashes them together to generate a list of inmates who are held more than twelve hours after a court has ordered the inmates' release from custody. That September 23rd report allegedly

identified thousands of new over-detention class members based on new Odyssey and OMS data from 2017 through part of 2020.

On November 5, 2020, this Court granted in part Defendants' emergency motion to exclude this report because, after six years of litigation, this was Plaintiffs' *fourth* attempt at an expert report and that report presented a significantly revised methodology for analyzing the Odyssey and OMS data.  In light of Defendants' concerns over Plaintiffs' constantly shifting approaches, this Court directed, that Plaintiffs "must use the previously disclosed methodology for determining class membership." (Entry, Filing No. 434.)  On November 24, 2020, Plaintiffs provided a new report (their *fifth* attempt) and some supporting materials that they assert complies with this Court's November 5th order that provides an analysis of the new Odyssey and OMS data using their previously disclosed methodology.

As explained below, that November 24th report violates this Court's order. Moreover, Plaintiffs have failed—once again—to produce the underlying data and work papers from their experts necessary to evaluate their work. Defendants ask this Court either strike the November 24th report in its entirety and require Plaintiffs to proceed to trial on their previously disclosed report from May 10, 2019 or require Plaintiffs to submit a new report that complies with this Court's November 5th order as well as *all* underlying data and work papers from their experts.

**B.  Defendants' IT expert explains how Plaintiffs' consultants violated the November 5th order with their November 24th report.**

The Defendants' IT expert, Brian D'Andrade, Ph.D., has studied Plaintiffs' November 24th report and the limited data Plaintiffs provided in support of that report.  His conclusions are contained in his supplemental declaration dated February 16, 2021.  (Filing No. 439.)

As Dr. D'Andrade explains, Plaintiffs' November 24th report shows their consultants significantly restructured the scripts used to generate their new analysis and conclusions and did so *without need*. In fact, as Plaintiffs' consultants admit, "the script was rearranged to run faster but use the same logic and has the same function." Obviously, rearrangement of the scripts so their work could "run faster" was completely unnecessary and was a clear violation of this Court's order. That unneeded change, if permitted, will "create an unnecessary additional burden on defendants to verify if the scripts actually perform the same function as the previous versions did." (D'Andrade Supp. Dec., ¶ 4(a). Avoiding that kind of harm and unnecessary expense to Defendants is exactly why this Court issued the November 5th order.

But, that is not all that Plaintiffs have changed with their November 24th report. Until the November 24th report, Plaintiffs' methodology "merged" or mashed together Odyssey and OMS data using a number of scripts[1], including one that Plaintiffs identified as *Script 07a - Merge on CaseNumber.sql*. Script 07a merged data by relying on the Odyssey case numbering system. (Id., at 6(a).)

Script 07a utilized cause numbers as part of the review of the inmate data. However, the new methodology apparently changed Plaintiffs' approach in a significant way because it does not appear that their new analysis uses the case numbers from Odyssey. While making that change, Plaintiffs offer no explanation for why they did it. They provided no documentation addressing the change, how it was accomplished, or what other impacts this change had on their work and how it affected other scripts. (Filing No. 439, ¶ 6(a).) To make this change and say nothing about how or why it was made suggests that the change was something Plaintiffs' consultants were

---

[1] "Scripts" as that term is used by Mr. D'Andrade and Plaintiffs' consultants refers to the computer logic that is used to run Plaintiffs' data analysis. That is, the scripts are at the heart of Plaintiffs' methodology.

3

hoping Defendants would not catch because the consultants do not want to provide the explanation behind it.

This change also illustrates a fundamental irony behind Plaintiffs' entire theory of liability. Plaintiffs allege that the Defendants were deliberately indifferent to whether inmates were timely released. To try and prove that claim, Plaintiffs have been required to build a database that gives them *direct access* to Odyssey data. They also chose to rely upon one of their consultants using access to a public case record system to look up case information to supposedly validate their work.

However, the Marion Superior Courts (which is not a party to this case) *affirmatively refused* to allow the Marion County Sheriff's Office to have direct access to the Court's Odyssey database and instead required the MCSO to obtain inmate release orders through the Court's CORE/DEXTER interface. (*Id.*) So, the only way that Plaintiffs have been able to try to prove their deliberate indifference claim, is to rely on their direct access to court records – something that to this day, the Marion County Superior Courts have refused to provide to the MCSO.

  C. **In addition to not providing information about script changes, Plaintiffs have not provided the new databases that they claim to have manufactured in order to generate the November 24th report and its conclusions about inmate over-detentions.**

The November 24th report claims that Plaintiffs' consultants created new databases – OMS3 and Odyssey3. Yet, Plaintiffs did not provide those databases to the Defendants even though previous versions of the databases were provided so Defendants could analyze them. (*Id.* at ¶ 6b-c.) Given that Defendants previously served document production requests for these materials and Plaintiffs previously provided them, Plaintiffs' refusal to provide these new databases is troubling to say the least.

4

Not only were these new databases not provided, but Plaintiffs' new reports provides no explanations for critical issues necessary to understand whether Plaintiffs' new methodology even works. (*Id.* at ¶ 6(d) – 8). As Mr. D'Andrade explains, the failure to provide this critical data and description of their analysis prevents him from determining what additional violations of this Court's November 5th Order may be lurking in the data.

By shifting their methodology as outlined in violation of the November 5th Order and failing to provide the new databases, Plaintiffs' IT personnel failed to "offer good reason to think that [their] approach produces an accurate estimate using professional methods [that are]. . . testable." *Zenith Electronics Corp.*, 395 F.3d at 419. Without this evidence, it is impossible to know whether Plaintiffs' consultants are going to try and present testimony that is "scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue...." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

## Conclusion

Without a final report from Plaintiffs that complies with this Court's previous orders and identifies whom Plaintiffs believe are over-detentions (despite six years of litigation), Defendants are stymied in their trial preparation. Defendants therefore request either exclusion of Plaintiffs' most recent expert report or a report from those experts within the next thirty days that meets the requirements of this Court's November 5th order.

FROST BROWN TODD LLC

By: */s/Anthony W. Overholt*
Anthony W. Overholt, #16481-49

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of February, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Richard A. Waples | John Young |
| Waples & Hanger | Young & Young |
| 410 N. Audubon Road | 128 N. Delaware St., 3rd Floor |
| Indianapolis, In  46219 | Indianapolis, IN  46204 |

                                                */s/Anthony W. Overholt*
                                                Anthony W. Overholt

FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
aoverholt@fbtlaw.com

LR02314.0629431   4846-1015-6764v1