UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL DRIVER, ) <br> THE ESTATE OF TERRY CLAYTON, ) <br> MICHAEL BOYD, ) <br> NICHOLAS SWORDS, and, ) <br> ROY SHOFNER, ) <br> individually and as representatives ) <br> of a class of all similarly situated individuals, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> THE MARION COUNTY SHERIFF, ) <br> and, ) <br> THE CONSOLIDATED CITY OF ) <br> INDIANAPOLIS AND MARION COUNTY, ) <br> ) <br> Defendants. ) | CAUSE NO. 1:14-cv-2076-RLY-MJD |

**ORDER APPROVING CLASS ACTION SETTLEMENT**

This Court previously granted preliminary approval of the Parties' Settlement Agreement, finding it fair, reasonable, and adequate, and directing notice to the class of the proposed settlement, their rights to opt-out, object, or to take part in the settlement. Dkt. 520 (12/28/21). The Court also set a Fairness Hearing to consider the parties' proposed settlement, and any objections thereto. Following the Fairness Hearing held on July 29, 2022, the Court makes the following findings and grants Final Approval to the Parties' Settlement Agreement. A separate entry of Final Judgment pursuant to Fed. R. Civ. Pro. 58 will be entered. The Court finds:

**STANDARD**

1. Federal Rule of Civil Procedure 23(e) governs the settlement of class actions and allows the Court to approve a proposed settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P.

23(e)(2). *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)).

2. Court approval of a class settlement agreement requires "the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Id*. "Indeed . . . district courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id*.

3. The Seventh Circuit directs that in deciding whether to grant final approval to a class settlement, reviewing courts should consider the same factors relevant to preliminary approval, those being: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872, at 7-8, 2017 WL 6733688, (N.D. Ill. Dec. 20, 2017).

4. The above factors encompass in large part the 2018 amendments to Federal Rule of Civil Procedure 23(e) concerning approval of class settlement agreements, which provide:

> **(2)** *Approval of the Proposal.* If the [settlement] proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> **(A)** the class representatives and class counsel have adequately represented the class;
> **(B)** the proposal was negotiated at arm's length;
> **(C)** the relief provided for the class is adequate, taking into account:
> **(i)** the costs, risks, and delay of trial and appeal;
> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
        **(iv)** any agreement required to be identified under Rule 23(e)(3); and
        **(D)** the proposal treats class members equitably relative to each other.
        **(3)** *Identifying Agreements.* The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
        **(4)** *New Opportunity to Be Excluded.* If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

Federal Rule Civ. Pro. 23 (e).

5. Here, all such factors are satisfied and favor final approval.

**The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement**

6. The most important factor in determining whether a class settlement is fair, reasonable, and adequate is the strength of the plaintiffs' case on the merits balanced against the amount offered in settlement. *Synfuel Techs., Inc.*, 463 F.3d at 653. The 2018 Rule 23(e) amendment factors subsumed within this traditional Seventh Circuit factor include: whether "the class representatives and class counsel have adequately represented the class;" whether "the proposal was negotiated at arm's length;" whether "the relief provided for the class is adequate, taking into account: … the costs, risks, and delay of trial and appeal [;] and, whether the settlement treats class members equitably relative to each other." Rule 23(e)(2)(A), (B), (C), and (D).

7. Here the Court finds the settlement was negotiated at arm's length and only after seven years of contentious litigation, three settlement conferences, and achieved close to the February 2022 trial date. The settlement is favorable to the Class. Continued litigation to a jury trial and subsequent post-trial motions and certain appeals would present substantial risks, as well as considerable time and expense.

8. In considering these factors the Seventh Circuit has directed district courts to, in some fashion, assess the net expected value of continued litigation to the class. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002). The Court should not reject a settlement "solely because it does not provide a complete victory to plaintiffs" because the "essence of settlement" is compromise. *Wright v. Nationstar Mortg. LLC, No.* 14 C 10457, 2016 U.S. Dist. LEXIS 115729, 2016 WL 4505169, at *7 (N.D. Ill. Aug. 29, 2016) (citing *In re AT&T Mobility Wireless*, 270 F.R.D. 330, 347 (N.D. Ill. 2010)). "An integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *In re AT&T Mobility Wireless*, 270 F.R.D. at 347 (quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)).

9. If this case were to proceed to trial, the Class could receive more, less, or nothing at all. Whatever the outcome, post-trial motions and an appeal by the losing party with its attendant risks, delays, and further expense, are all but guaranteed. Indeed, both parties have engaged in substantial motion practice, already pursued interlocutory appeals, and it appears would pursue whatever avenues for relief they have available in the future. The risk of loss or of limited recovery if successful are significant factors favoring approval of settlements of even very strong cases. *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2021 U.S. Dist. LEXIS 6510, at *26 (S.D. Ind. Jan. 13, 2021) ("Here, continued litigation with Conseco Life presents significant risks and costs—the most obvious risk is that Plaintiffs will not be successful on their claims. Furthermore, '[e]ven if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory.'") (quoting *Reynolds,* 288 F.3d at 284).

10. The strength of the Class's case is strong. Plaintiffs have successfully achieved class certification (Dkt. 171); successfully appealed the denial of certification of the computer class to the Seventh

4

Circuit (Dkt. 196); successfully achieved class certification of the computer class upon remand (Dkt. 390); prevailed in having the Seventh Circuit reject Defendants' petition for an interlocutory appeal of the Court's order certifying the computer class (Dkt. 392); survived *Daubert* motions challenging Plaintiffs' experts (Dkt. 399, 400); survived summary judgment (Dkt. 408); prevailed in having the Court establish a presumption that delays of 12 hours or more in the release of inmates are presumptively unreasonable (Dkt. 408); prevailed in having the Court deny Defendants' Renewed Motion (Dkt. 438) to Exclude Plaintiffs' Experts (Dkt. 455); prevailed on Defendants' renewed motion (Dkt. 449) to decertify the class (Dkt. 509); and prevailed on Plaintiffs' motion (Dkt. 451) to strike/exclude Defendants' late additions to the witness and exhibit lists. Dkt. 509.

11. The amount of the Defendants' offer contained in the settlement agreement is substantial and reflects the strength of the Class's case.

12. The Defendants' settlement offer provides for payments of $40 per hour for each hour of overdetention (hours over 12) experienced by approximately 13,430 Class Members during 15,038 jail stays (some Class Members had more than one jail stay). Dkt. 517-1.

13. This Court has previously limited the Class to those individuals detained 12 or more hours. Dkt. 408, Entry at 17-18 (06/03/20).

14. Plaintiffs' experts were able to identify 15,083 jail stays from June 1, 2014, through June 30, 2020, in which 13,430 Class Members were subject to detentions beyond 12 hours following the entry of a release order or the payment or posting of bond or bail with no holds, warrants, or detainers justifying the continued detention of the individual. Dkt. 442-1, Supplemental Report on the Class Membership for the New Data. The collective overdetention time (hours over 12) experienced by

Class Members during these 15,083 jail stays is 175,814 hours. *Id*. Dkt. 517-1, Settlement Agr, ¶ 1. Dkt. 532, Stinehart Decl. ¶3.

15. If all qualifying class members had made claims, the Defendants' collective exposure to the Class would be over seven million dollars. (175,814 hours x $40/hr = $7,032,560).

16. The settlement treats all class members the same and is thus equitable. While class members had to make claims through a claims process, the claims process is non-adversarial, and the Defendants are precluded from objecting to the payment of any claim made by any class member identified on the data set of 15,083 jail stays. Dkt. 517-1, Settlement Agr., ¶ 6.

17. Projecting the Class's potential recovery at trial and subsequent appeals is of course an inexact exercise. Nevertheless, recoveries in other Indiana and Illinois class cases involving overdetention claims provide information helpful in judging the reasonableness and adequacy of the proposed settlement here.

18. In *Donovan v. St. Joseph County Sheriff*, 2015 U.S. Dist. LEXIS 160687 (N.D. Ind), Judge Springmann approved a class action settlement alleging overdetentions at $51 per hour of over-detention. In doing so Judge Springmann provided perhaps the best evaluation of proposed settlement amounts in class overdetention cases by comparing the proposed amount in that case to the outcomes in thirteen substantially similar cases of overdetention:

> Based on recoveries achieved through jury verdicts or settlements in thirteen substantially similar or related cases (Joint Br. 2-3, ECF No. 86), the range of possible outcomes is from $1.00 per hour of over detention to $75.00 per hour of over detention. The probabilities for the range of outcomes is estimated as follows:
>
> • $10.00 per hour of over detention or less: 25%;
> • $25.00 per hour of over detention: 25%;
> • $40.00 per hour of over detention: 25%;
> • $50.00 per hour of over detention: 20%;
> • $75.00 per hour of over detention: 5%.
>
> Multiplying these amounts, and adding them together, yields a net expected value

6

> of $32.50 per hour of over detention. The proposed settlement in this case would provide each class member with more than $51.00 per hour of over detention for general loss of liberty claims. Based on these numbers, the strength of Plaintiffs' case compared to the Defendant's offered settlement amount supports a finding that the settlement is fair, reasonable, and adequate.

*Donovan v. St. Joseph County Sheriff*, 2015 U.S. Dist. LEXIS 160687, at *9.

19. Importantly, the Court in *Donovan* also approved attorney fees of 40% plus litigation expenses which were to be deducted from the common fund (*Id.*, at 12), effectively leaving class members with net recoveries of approximately $31 per hour ($51 x 0.6 = $30.60).

20. Taking such a claim to trial can be risky with no certain outcome, as the class realized in *Myatt v. Allen County Sheriff*, Cause No. 1:10-cv-00064-TLS (N.D. Ind.). In *Myatt,* the defendant sheriff admitted liability by stipulating that the class experienced over-detentions due to *Gerstein* violations. The parties were unable to agree to damages, and hence that issue went to trial. The jury awarded the class a total of $364,000.00, which, distributed at the same hourly rate across the class, resulted in an approximate rate of $22.00 per hour of over-detention for each inmate class member. *Id.*, ECF No. 158 (described in subsequent proceedings in *Myatt v. Gladieux*, 2017 U.S. Dist. Lexis 32001, 2017 WL 894476 (March 7, 2017, N.D. Ind.).

21. Here, the settlement amount of $40 per hour of overdetention to class members, with no attorney fees or expenses deducted from this amount, results in a higher effective hourly rate recovery for individual class members than the recoveries in either *Donovan* or *Myatt*. Indeed, Class members' net recoveries of $40 per hour puts the recovery here in the top 5% of the similar case recoveries surveyed by Judge Springmann. See *Donovan,* 2015 U.S. Dist. LEXIS 160687, at *9.

22. As these cases show, the Class could go to trial and, even if successful, receive half of the settlement amount, as the class did in *Myatt*, or slightly more per hour as in *Donavan* but

subject to a forty percent reduction for attorney fees and expenses as occurred there. However, again, there is no stipulation as to liability here, and thus no guarantee that the Class would prevail at trial, so there is always a risk of a zero recovery. There is simply no way to know beforehand what a jury may award a prevailing class. What is known is that the proposed settlement here is substantial and guaranteed, and considerably more than almost all the effective hourly recoveries in the fourteen most relevant comparable cases. These are significant considerations favoring a finding that the proposed settlement is fair, reasonable, and adequate.

23. Generally, a settlement that provides for equal or pro rata shares to each class member, such as the $40 per hour for Class Members here, will meet the Rule 23(e) standard of treating all Class Members equitably to each other. See e.g., *Burnett v. Conseco Life Ins. Co.*, No. 18-CV-0200, 2021 U.S. Dist. LEXIS 6510, 2021 WL 119205, at *9 (S.D. Ind. Jan. 13, 2021). This settlement provides all class members with the same $40 per hour of overdetention. Therefore, it is equitable.

24. Thus, this proposed settlement is fair, reasonable, and adequate, and satisfies the Rule 23(e) factors that "the class representatives and class counsel have adequately represented the class;" "the proposal was negotiated at arm's length;" "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal[;]" and, that the "settlement treats class members equitably to each other." Rule 23(e) (2)(A), (B), (C), and (D).

25. Each of these most important factors support final approval of the settlement.

**The Likely Complexity, Length, and Expense of Continued Litigation**

26. The Court finds that an assessment of the likely complexity, length, and expense of the

litigation also militates to finding the settlement fair reasonable and adequate.

27. This case was filed nearly eight years ago and has been highly complex and expensive.

28. A two-to-three-week jury trial with dozens of witnesses including four out-of-state experts (the Class's three experts are from Tennessee, Rhode Island, and Texas; the Defendants' expert is from Maryland) would itself be expensive and time-consuming.

29. At the time of settlement, numerous pretrial motions (See e.g., Dkts. 464-506) had yet to be ruled-upon, the outcomes of which could substantially alter each party's prospects at trial.

30. While one party would likely win or win a mixed result at trial, the history of this case guarantees that the non-prevailing party will continue with post-trial motions and an appeal, with no certain results. The case could continue for years and could even result in a retrial and subsequent post-trial motions and appeals therefrom.

31. Thus, this factor of the likely complexity, length, and expense of the litigation also results in a finding that the settlement is fair reasonable and adequate

**The Amount of Opposition to the Settlement Among Affected Parties**

32. The Seventh Circuit has held that the amount of opposition to a settlement among affected parties is a factor district courts should consider in deciding whether to approve a class action settlement. *Synfuel*, 463 F.3d at 653. A low percentage of opposition favors a finding that a settlement is fair, reasonable, and adequate under Rule 23. *See, e.g., AT&T Mobility*, 789 F. Supp. 2d at 965 (citations omitted); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 U.S. Dist. LEXIS 23869, at *25 (N.D. Ill. Feb. 27, 2015).

33. The parties' Settlement Agreement provided that any objections to the settlement should be filed directly with the Court. No objection has been filed, and Rust Consulting, the Settlement Administrator, has received no objections to the settlement. Dkt. 532, Stinehart Decl. ¶13.

34. There was one putative class member who attended the Fairness Hearing and the Court allowed that person to speak. It appeared that he objected to the settlement although he had filed no formal objection. This person spoke of individual damages and stated that he had been advised by Class Counsel to exclude himself from the settlement and pursue his own litigation. The Court does not find that this person articulated any valid basis to object to the settlement.

35. Accordingly, there is no filed opposition to the settlement.

36. Even if there had been opposition to this agreement, the settlement conforms with Rule 23(e)(4) as amended in 2018 and includes the right of any dissatisfied Class Member to opt-out of the settlement and pursue their own claims if they so choose. Dkt. 517-1, Settl. Agr., ¶ 13.

37. Only three (3) individuals opted-out of the settlement. Dkt. 532, Stinehart Decl. ¶12. Those individuals are: Dusten Murray, Summer M. Ullrich, and Lorenzo L. Canada, Jr.

38. The Court thus finds that there was no opposition to the settlement, including no opposition to the settlement's provision for attorney fees and expenses, and hence this factor favors final approval of the settlement.

**The Opinion of Competent Counsel**

39. Courts assessing the fairness, reasonableness, and adequacy of a settlement should also consider the "opinion of competent counsel." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)).

40. Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux,* 690 F.2d at 634 (quoting intra alia *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)); *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2021 U.S. Dist. LEXIS 6510, at *27 (S.D. Ind. Jan. 13, 2021).

41. Class Counsel in this case have advanced the interests of prisoners for years in this and other litigation, and believe this settlement is in the best interest of the Class and represents a very good outcome.

42. The Court is familiar with class counsel and their high level of competency, which has been displayed throughout this litigation.

43. Class Counsel have devoted much of their practices and resources to this case for nearly eight years and it is their opinions that this settlement is an excellent result for the Class.

44. This factor favors final approval of the settlement.

**The Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement**

45. This is not a quickly filed and hastily settled class action. It is the opposite.

46. The case is over seven years old and has over 500 docket entries. Extensive discovery by both sides has been conducted with literally hundreds of thousands of documents exchanged and examined. Plaintiffs took twenty-nine (29) depositions and defended or participated in fifteen (15) depositions taken by Defendants. The parties filed twenty-seven (27) Joint Reports on the Status of Discovery and the Magistrate personally presided over forty-eight (48) discovery and status conferences.

47. The Parties have thoroughly litigated this case and know each other's evidence and positions.

48. This factor favors final approval of the settlement.

**Notice and Administration of the Settlement**

49. The Class notice and claims process set forth in the parties' settlement agreement preliminarily approved by the Court (Dkt. 520) have been accomplished and meet and exceed all Rule 23 standards.

50. Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Subsection (e) (ii) of that Rule requires courts to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

51. The notice here was reasonably calculated to, under all circumstances, apprise Class Members of the terms of the Settlement Agreement, and the rights of members to make claims, object to the settlement, or to exclude themselves from the Class.

52. The Notice and Claims Process is thus consistent with the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances. See e.g., *In re Med. Informatics Eng'g, Inc.*, No. (MDL 2667), 2019 U.S. Dist. LEXIS 164021, at *6 (N.D. Ind. Sep. 25, 2019).

53. The Settlement Agreement preliminarily approved by the Court (Dkt. 520) provided that the Class was notified, and the Claims Process administered, by Rust Consulting, a leading nationwide class action settlement administrator. Over the last 40 years Rust has administered more than 7,600 class actions involving numerous matters including prisoners' civil rights. Dkt. 532, Stinehart Declaration, ¶ 2; See also About Rust Consulting, https://www.rustconsulting.com/home-rust-consulting-inc/portalid/0

54. Rust's responsibilities under the settlement included a vigorous and informative methodology for providing notice to Class members, including by First Class U.S. Mail, with steps to update addresses before mailing, address tracking, and skip tracing all returned notices and remailing to updated addresses; notice by publication in the Indianapolis Star; notice via a dedicated website; and the maintenance of a toll-free 24-hour call center to assist with notice and the claims process.

55. The Notice, Claim Forms, and toll-free assistance line were all available in both English and Spanish.

56. The Claims process is an industry-standard one accepting claims both through the mail and electronically directly on Rust's website. Dkt. 532, Stinehart Decl. ¶ 2. As Rust Consulting has attested, "the Class Notice provided here was consistent with industry standards and was designed to provide the best notice practicable to class members." Dkt. 532, Stinehart Decl. ¶11.

57. In addition to the Claims Administrator's Class Notice efforts, Class Counsel have also operated an independent website dedicated solely to this case and have posted the Class Notice and all important documents filed in the case on that website and have included a link to the Rust Class Website. See https://www.overdetentionmarioncountyjail.com/

58. The Notice and Claims process here was highly effective. Overall, the Class's experts were able to identify 15,083 jail stays experienced by 13,430 separate individuals. Dkt. 532, Stinehart Decl. ¶ 3.

59. The Class's experts identified the most recent and best mailing addresses for each Class Member from the OMS and Odyssey data and provided those to the Rust. Dkt. 532, Stinehart Decl. ¶ 3. Rust then ran those addresses through the U.S. Postal Service to obtain any updated mailing addresses. Dkt. 532, Stinehart Decl. ¶ 3. Rust then mailed First Class U.S. Mail notices and claim forms to 13,430 separate addresses. *Id.,* Stinehart Decl. ¶ 4.

60. Of those mailings, 4,498 Notices were returned as undeliverable. Of these returned Notices, 71 had valid forwarding addresses and 4,427 did not. *Id*. ¶ 5.

61. If the returned Notice included forwarding information provided by the USPS, an additional Notice was mailed to the forwarding address. For returned Notices with no forwarding address,

Rust used standard skip-trace resources to try to obtain a new address.

62. Through this process Rust re-mailed 3,948 Notices to Settlement Class Members. Of those mailings, only 1,080 were returned as undeliverable a second time. *Id.* ¶ 6.

63. Rust also published the class notice in the *Indianapolis Star* on February 3, 2022. *Id.* ¶ 7.

64. On January 27, 2022, Rust established an automated toll-free number with pre-recorded information concerning the Settlement. The toll-free number includes functionality allowing callers to request a copy of the Class Notice and Claim Form. As of June 27, 2022, there have been 212 calls to the toll-free number. Dkt. 532, Stinehart Decl. ¶ 8.

65. Also on January 27, 2022, Rust established a website where Settlement Class Members could download a Claim Form to be submitted by U.S. Mail or could file their Claim online. Complete copies of the Settlement Agreement, the Preliminary Approval Order, and the Notice in both English and Spanish could also be viewed and downloaded on the Settlement website. As of June 27, 2022, there have been 6,530 unique visitors to the website. Dkt. 532, Stinehart Decl. ¶ 9.

66. Class Counsel also went beyond the identification and notification procedures required by the Settlement Agreement and enlisted the assistance of the Indiana Department of Correction to help identify potential Class members incarcerated in IDOC facilities.

67. Class Counsel provided a list of all Class Members to the Information Technology office of the Indiana Department of Correction and requested it to run a check on whether any Class Members were incarcerated in IDOC institutions, and, if so, which facilities and addresses. The IDOC undertook that search and reported that 429 Class Members were incarcerated at IDOC facilities. Class Counsel then submitted those Class members and their institutional addresses to Rust Consulting, and Rust determined that 78 of those incarcerated class members

had already submitted claim forms and hence then Rust mailed the Class Notices and Claim forms to the remaining 351 IDOC incarcerated class members who had not yet filed claims. Dkt. 532, Stinehart Decl. ¶ 10.

68. As shown above, almost all Class members received direct U.S. Mail notice of their rights to claim, but only 882 Class Members filed Valid Claims. Dkt. 531, Parties' Joint Report on Valid Claims and Exclusions. (05/12/22). This amounts to a 6.56% claim rate. Dkt. 532, Stinehart Decl. ¶ 17. This claim rate is not unusual and is typical in class action claims proceedings. Dkt. 532, Stinehart Decl. ¶ 18.

69. Low claim rates are not unusual in class actions, as few class members take the time to follow-up and file claims. See e.g., *Mullins v. Direct Dig., Ltd. Liab. Co.,* 795 F.3d 654, 667 (7th Cir. 2015) ("only a tiny fraction of eligible claimants ever submit claims for compensation in consumer class actions."); *Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ("only a fraction of class members filed a claim, as is often the case in consumer class actions"); *Lee v. Glob. Tel\*Link Corp.,* No. 2:15-cv-02495-ODW (PLA), 2018 U.S. Dist. LEXIS 163410, at \*21 (C.D. Cal. Sep. 24, 2018) (approving final settlement of prisoner class action where predicted claim rate was 5%, but actual claim rate was 1.8%) ("although only 1.8% of the potential class members submitted claims as opposed to the predicted 5%, this does not preclude final approval."); See also *Humphrey v. Stored Value Cards*, No. 1:18-cv-01050, 2021 U.S. Dist. LEXIS 5539, at \*5 (N.D. Ohio Jan. 12, 2021) (approving settlement where claim rate was "just over 1%"); *Bayat v. Bank of the W.,* No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at \*15-16 (N.D. Cal. Apr. 15, 2015) (approving class settlement where claim rate was "just 1.9%" given that "for those class members who did file claims, the monetary relief available appears

15

reasonable. Each class member who submitted a claim is due to receive approximately $151 — not a trifling sum by any means, and in excess of the per claimant pay outs recently approved by other courts in TCPA class actions.").

70. There is no reason to believe that the claim rate here would be significantly higher after trial rather than before, and no reason to conclude the class notice and claim process here were ineffective or deficient. Indeed, the notice and claim process was the best they could be. Dkt. 532, Stinehart Decl. ¶ 20 ("The claims process utilized here is consistent with industry standards and is designed to provide the most effective means of distributing relief to the class."). The low claim rate was higher than comparable class actions, and a product of apparent apathy, not ineffectiveness of the notice or claim process.

71. Here the class notice and claims procedure comported with all due process and class action claims process standards and was administered by an industry leader in class action administration. While only 882 individuals out of an eligible 13,430 potential eligible Class Members took the time to file claims, almost all Class Members were directly notified and provided the opportunity to do so. Those who did take the time to file claims will receive the reasonable sum of $40 for each hour of overdetention. As set forth *infra*, this recovery is among the top 5% for similar class action overdetention cases and is more than reasonable.

72. These 882 valid Claim Forms represent 12,026 compensable hours at $40 per hour, for a total projected payout of $481,040. Dkt. 532, Stinehart Decl. ¶ 16.

73. The Notice and Claims Process previously approved by the Court more than satisfies Rule 23 and due process standards. This factor favors final approval of the settlement.

**Attorney Fees and Expenses**

74. The federal rules provide that "[i]n a certified class action, the court may award reasonable

attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Pro. 23 (h). Here, the parties' Settlement Agreement and the law, specifically 42 U.S.C. §1988, authorize the award of attorney fees and expenses.

75. The parties' Settlement Agreement provides that the Defendants will pay Class Counsel's attorney fees of $4,000,000 and Class expenses of $550,000. Dkt. 517-1, Parties' Settlement Agreement, ¶¶ 11, 12.

76. These fees and expenses are separate from the substantive relief made available to the Class and do not diminish Class member recoveries.

77. The Court approves these fees and expenses because they are: reasonable both in terms of hourly rates ($650 each for Attorneys Waples and Young) and in terms of the numbers of hours expended; less than Class Counsel's actual attorney fees and expenses; recoverable under 42 U.S.C. §1988; agreed to by the Defendants; do not diminish class member recoveries; and proportionate to the substantial relief (over seven million dollars) made available to the Class under the settlement agreement. Dkt. 522 through Dkt. 524-8 and Dkt. 530 and 530-1 (04/05/22).

78. The time and expenses expended by Class Counsel were reasonably incurred on behalf of the Class which achieved significant results. The Defendants have agreed to pay a reduced portion of those fees and expenses as part of the settlement, payments which do not diminish the Class's recovery. The fees and expenses are reasonable and are approved by the Court.

79. This factor favors final approval of the settlement.

**Class Representation Awards to the Class Representatives**

80. Included in the $550,000 expenses agreed to by the Defendants are proposed payments, upon the Court's approval, of representation awards to the five Class Representatives.

81. Plaintiffs have requested $20,000 representation fees for each of the five individual class representatives, amounting to $100,000.

82. These awards are reasonable given the over seven-year span of this case and the significant involvement of each of the five class representatives.

83. These awards are supported by the substantial efforts of the five class representatives here over a seven-year period, are consistent with class representation awards in similar cases, and will come directly from the Class's cost recovery of $550,000 and will not diminish the recovery by Class Members.

84. This factor favors final approval of the Settlement Agreement.

**No other Agreements**

85. Pursuant to Federal Rule of Civil Procedure Federal Rule of Civil Procedure 23(e)(3), Plaintiffs have submitted their Statement that there are no other agreements other than the parties' settlement agreement submitted in this case. Dkt. 533.

86. This factor favors final approval of the Settlement Agreement.

**New Opportunity to be Excluded**

87. Pursuant to Federal Rule of Civil Procedure 23(e)(4), the parties' settlement agreement provides the opportunity for all class members to opt-out of the settlement. Dkt. 517-1, Settlement Agreement, ¶13.

88. Only three individuals elected to do so. Dkt. 531, Parties' Joint Report on Valid Claims and Exclusions; Dkt. 532, Stinehart Decl. ¶ 12.

89. This factor favors final approval of the Settlement Agreement.

**Conclusion**

90. The settlement agreement here was reached after years of significant, highly contested, and extremely expensive and time-consuming litigation and provides class members a top 5% recovery in terms of effective net hourly rates for overdetention awards relative to fourteen (14) other similar cases.

91. The settlement is an excellent result, and all relevant factors favor final approval.

92. The Court grants final approval of the Parties' Settlement Agreement, excluding the three opt-outs from the case. The Court directs Defendants to make available to the Claims Administrator $481,040 to pay valid claims; directs the Defendants to pay Class Counsel attorney fees of $4,000,000 and expenses of $550,000 pursuant to the Settlement Agreement, which includes $20,000 class representative fees to each to the five class representatives.

93. A separate Final Judgment will be entered.

**SO ORDERED this 8th day of August 2022.**

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana